# PHILADELPHIA, BALTIMORE AND WASHINGTON RAILROAD COMPANY v. SCHUBERT.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 549. Argued April 29, 1912.—Decided May 13, 1912.

Congress has power to impose the liability on the employer defined in the Employers' Liability Act of 1908. *Second Employers' Liability Cases*, 223 U. S. 1.

Where Congress possesses the power to impose a liability it also possesses the power to ensure its efficacy by prohibiting any contract, rule, regulation, or device in evasion of it. *Second Employers' Liability Cases*, 223 U. S. 1, 52.

Congress has power to enforce the regulations, validly prescribed by the Employers' Liability Act of 1908, by the provisions of § 5 of the act providing that exemptions from liability shall be void, and that the acceptance of benefits under a relief contract shall not be a bar to recovery.

In framing the Employers' Liability Acts of 1906 and 1908 Congress well understood the practice of maintaining relief departments, and by the statute of 1908 Congress enlarged the scope of the clause defining contracts for immunity which should not prevail, and included stipulations which made acceptance of benefits from such relief departments a release from liability.

Congress has power, in regulating interstate commerce and commerce in the District of Columbia and in the Territories, to legislate unfettered by any existing arrangements or contracts in conflict with its policy. Prior arrangements are necessarily subject to the paramount authority of Congress. *Louisville & Nashville R. R. Co.* v. *Mottley*, 219 U. S. 467.

The provisions of § 5 of the Employers' Liability Act apply as well to existing as to future contracts.

36 App. D. C. 565, affirmed.

THE facts, which involve the construction of § 5 of the Employers' Liability Act of 1908, are stated in the opinion.

*Mr. Frederic D. McKenney,* with whom *Mr. John Spalding Flannery* and *Mr. William Hitz* were on the brief, for plaintiff in error:

Section 3 of the Employers' Liability Act of 1906 differs from the provisions of § 5 of the act of 1908, not only substantially, but vitally.

The *Employers' Liability Cases,* 207 U. S. 463, and the cases of *El Paso &c.* v. *Gutierrez,* 215 U. S. 87, and *Mc-Namara* v. *Washington Terminal Co.,* 35 App. D. C. 230, cited and relied upon by defendant in error, if pertinent in any aspect to the pending cause, cannot be said to have foreclosed it, for each of those cases involved provisions of the law of 1906 only, while the pending cause has concern solely with the act of 1908.

Nor is the case foreclosed by *C., B. & Q. R. Co.* v. *McGuire,* 219 U. S. 549, for there the reserved and plenary power of a State determined the judgment, while here the applicability in the circumstances of the delegated and restricted power of the Federal Government is a disputed matter.

The act of 1908 is not applicable to the relief department contract pleaded in this case.

The act of 1906 is aimed at the contract, and says that neither the contract—no matter what its purpose or intent may be or how limited its scope—not any acceptance of benefits thereunder shall be a bar or defense. But when Congress again had this matter before it the criticisms of the former statute and the effect of that statute upon perfectly innocent contracts caused an awakening and Congress was brought to realize that all relief department contracts were not objectionable; that most of them were beneficial to the men, by furnishing to those engaged in the hazardous business of railroading a cheap and secure form of life, accident and disability insurance, which they could not obtain otherwise except by paying almost prohibitive rates to the companies en-

gaged in such business. So that § 3 of the act of 1906 was repealed, modified in many essential particulars, and reënacted as § 5 of the subsequent act of 1908.

In the act of 1908 Congress indicates as plainly as language can express it an intention to strike down not all relief department contracts, but only two classes thereof, namely, those contracts, rules, regulations or devices the purpose or intent of which is to exempt the carrier—not merely restrict, limit or modify the carrier's common-law duties and obligations—and those contracts of exemption the purpose or intent of which is to enable the carrier to evade any liability created by that statute. Contracts of exemption from liability, if the liability arises otherwise than as a result of this act, do not come within its prohibition.

For the distinction between contracts of the character involved in this case and those which have heretofore come under the ban of the courts, see *Johnson* v. *Philadelphia & Reading R. R. Co.*, 163 Pa. St. 127; *Atlantic Coast Line* v. *Dunning*, 166 Fed. Rep. 850; *Day* v. *Atlantic Coast Line Co.*, 179 Fed. Rep. 26.

It is apparent from the foregoing and many other cases that might be cited that at the time the contract in this case was entered into, in October, 1905, and when the Employers' Liability Act of 1908 was passed, relief department contracts like the one pleaded in this case, by the uniform trend of decision in the Federal and state courts of this country, had been held not to be against public policy, and not to be contracts exempting the employer from responsibility for his negligence.

If it had been the intention of Congress to strike down all relief department contracts, whether made prior or subsequent to the passage of the law, is it not reasonable to suppose that the language employed would have been "any contract the *effect* of which, etc.," instead of the words "purpose or intent," which refer to the meaning

in the minds of the parties at the inception of the contract.

Courts uniformly refuse to give to a statute a retrospective operation whereby existing contracts or rights previously vested are injuriously affected, unless compelled to do so by language so clear and positive as to leave no room to doubt that such was the intention of the legislature. *Chew Heong* v. *United States*, 112 U. S. 536; *Twenty Per Cent Cases*, 20 Wall. 179.

The contract in *McNamara* v. *Washington Terminal Co.*, 35 App. D. C. 230, was essentially different. That contract was compulsory and not voluntary as in this case. See Hearings of Committee on the Judiciary on the Employers' Liability Bill of 1908, pp. 195, 196.

*Mr. John A. Kratz, Jr.*, with whom *Mr. M. J. Fulton* and *Mr. Joseph W. Cox* were on the brief, for defendant in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

This action was brought by Schubert, the defendant in error, against the Philadelphia, Baltimore and Washington Railroad Company to recover damages for personal injuries. He received the injuries on May 13, 1908, while in its service as a brakeman within the District, and they were due to the negligence of a fellow-servant.

The company pleaded the general issue and in addition filed a special plea that Schubert was at the time a member of its "Relief Fund" under a contract of membership made in 1905, in which it was agreed that the company should apply as a voluntary contribution from his wages $2.10 a month for the purpose of securing the benefits described in certain regulations. These contributions continued from October 18, 1905, to May 13, 1908, the date of the accident. Among the regulations, by which he agreed to be bound, was the following:

"58. Should a member or his legal representative make claim, or bring suit, against the Company, or against any other corporation which may be at the time associated therewith in administration of the Relief Departments, in accordance with the terms set forth in Regulation No. 6, for damages on account of injury or death of such member, payment of benefits from the Relief Fund on account of the same, shall not be made, until such claim shall be withdrawn or suit discontinued. Any compromise of such claim or suit, or judgment in such suit, shall preclude any claim upon the Relief Fund for benefits on account of such injury or death, and the acceptance of benefits from the Relief Fund by a member or his beneficiary or beneficiaries, on account of injury or death, shall operate as a release and satisfaction of all claims against the Company and any and all of the corporations associated therewith in the administration of their Relief Departments, for damages arising from such injury or death."

A stipulation that the acceptance of benefits should constitute a release from all claims for damages was also incorporated in the application for membership.

The plea further set forth that the relief fund was formed by voluntary contributions from the employés of the defendant Company and other companies in association with it for the purpose, appropriations by the Company whenever necessary to make up any deficit, the income or profit derived from investments of the moneys of the fund and such gifts or legacies as might be made for its use. The companies took general charge of the department, guaranteed the fulfillment of its obligations, became responsible for the safekeeping of its funds, supplied the necessary facilities for conducting the business of the department and paid all its operating expenses. On December 31, 1908, the total number of employés of the defendant Company was 8458, of which 6909 were

members of the "Relief Fund"; during the year 1908 the Company contributed as the cost of administration the sum of $21,557.02, and during the period of the plaintiff's membership its total contribution for this purpose was $57,610.51. In addition, the Company furnished the facilities of its mail, express and telegraph departments free of charge.

It was also alleged that after his injury Schubert (between June, 1908, and August, 1908) had voluntarily accepted benefits amounting to $79; that he had subsequently presented his claim for damages, in view of which no further payments were made, and that the acceptance of the benefits above mentioned was a bar to his action.

The court sustained a demurrer to the special plea and Schubert recovered judgment for $7,500, which was affirmed by the Court of Appeals.

The questions presented by the assignments of error relate to the validity of the Employers' Liability Act of April 22, 1908, c. 149 (35 Stat. 65), under which the action was maintained; and particularly, both to the applicability, and to the validity, if applicable, of § 5 of that act, upon which the court below based its ruling as to the insufficiency of the special plea.

That Congress did not exceed its power, in imposing the liability defined by the statute, has been decided by this court. *Second Employers' Liability Cases*, 223 U. S. 1. Section 5 provides:

"That any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void: *Provided*, That in any action brought against any such common carrier under or by virtue of any of the provisions of this Act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the

injured employé or the person entitled thereto on account of the injury or death for which said action was brought."

With respect to this section, the court said in the case cited: "Next in order is the objection that the provision in § 5, declaring void any contract, rule, regulation or device, the purpose or intent of which is to enable a carrier to exempt itself from the liability which the act creates, is repugnant to the Fifth Amendment to the Constitution as an unwarranted interference with the liberty of contract. But of this it suffices to say, in view of our recent decisions in *Chicago, Burlington & Quincy Railroad Co.* v. *McGuire,* 219 U. S. 549; *Atlantic Coast Line Railroad Co.* v. *Riverside Mills,* 219 U. S. 186, and *Baltimore & Ohio Railroad Co.* v. *Interstate Commerce Commission,* 221 U. S. 612, that if Congress possesses the power to impose that liability, which we here hold that it does, it also possesses the power to insure its efficacy by prohibiting any contract, rule, regulation or device in evasion of it." *Second Employers' Liability Cases, supra,* p. 52.

In *Chicago, Burlington & Quincy Railroad Co.* v. *Mc-Guire, supra,* the court had before it the amendment, made in 1898 (March 8, 1898, Laws of 1898, c. 49, p. 33), of § 2071 of the Code of Iowa. This section, in the cases within its purview, abrogated the fellow-servant rule and the amendment provided:

"Nor shall any contract of insurance, relief, benefit, or indemnity in case of injury or death, entered into prior to the injury, between the person so injured and such corporation, or any other person or association acting for such corporation, nor shall the acceptance of any such insurance relief, benefit, or indemnity by the person injured, his widow, heirs, or legal representatives after the injury, from such corporation, person, or association, constitute any bar or defense to any cause of action brought under the provisions of this section, but nothing contained herein shall be construed to prevent or invalidate

any settlement for damages between the parties subsequent to the injuries received."

It was held that the amendment was valid and hence that the defense based upon the acceptance of benefits could not be sustained. The court said (pp. 564, 572): "Neither the suggested excellence nor the alleged defects of a particular scheme may be permitted to determine the validity of the statute, which is general in its application. . . . Its provision that contracts of insurance relief, benefit or indemnity, and the acceptance of such benefits, should not defeat recovery under the statute, was incidental to the regulation it was intended to enforce. Assuming the right of enforcement, the authority to enact this inhibition cannot be denied. If the legislature had the power to prohibit contracts limiting the liability imposed, it certainly could include in the prohibition stipulations of that sort in contracts of insurance relief, benefit or indemnity, as well as in other agreements. . . . It does not aid the argument to describe the defense as one of accord and satisfaction. The payment of benefits is the performance of the promise to pay contained in the contract of membership. If the legislature may prohibit the acceptance of the promise as a substitution for the statutory liability, it should also be able to prevent the like substitution of its performance."

Upon similar grounds, Congress had the power to enforce the regulations validly prescribed by the act of 1908 by preventing the acceptance of benefits under such relief contracts from operating as a bar to the recovery of damages and by avoiding any agreement to that effect. The question is whether this power has been exercised; that is, whether the stipulation of the contract of membership asserted in defense comes within the interdiction of § 5. The former act of June 11, 1906, c. 3073 (34 Stat. 232), which was valid as to employés engaged in commerce within the District of Columbia (*Hyde* v. *Southern Ry.*

*Co.,* 31 App. D. C. 466; *El Paso & N. E. Ry. Co.* v. *Gutierrez,* 215 U. S. 87, 97, 98), contained explicit provision that such a contract or the acceptance of benefits thereunder should not defeat the action. Section 3 of that act was as follows:

"That no contract of employment, insurance, relief benefit, or indemnity for injury or death entered into by or on behalf of any employé, nor the acceptance of any such insurance, relief benefit, or indemnity by the person entitled thereto, shall constitute any bar or defense to any action brought to recover damages for personal injuries to or death of such employé: *Provided, however,* That upon the trial of such action against any common carrier the defendant may set off therein any sum it has contributed toward any such insurance, relief benefit, or indemnity that may have been paid to the injured employé, or, in case of his death, to his personal representative."

But it is urged that the substituted provision—of § 5 of the act of 1908—failed to embrace that which the earlier act specifically described. We cannot assent to this view. The evident purpose of Congress was to enlarge the scope of the section and to make it more comprehensive by a generic, rather than a specific, description. It thus brings within its purview "any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act." It includes every variety of agreement or arrangement of this nature; and stipulations, contained in contracts of membership in relief departments, that the acceptance of benefits thereunder shall bar recovery, are within its terms. The statute provides that "every common carrier by railroad in . . . the District of Columbia . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . resulting

in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." That is the liability which the act defines and which this action is brought to enforce. It is to defeat that liability for the damages sustained by Schubert which otherwise the company would be bound under the statute to pay, that it relies upon his contract of membership in the relief fund and upon the regulation which was a part of it. But for the stipulation in that contract, the company must pay; and if the stipulation be upheld, the company is discharged from liability. The conclusion cannot be escaped that such an agreement is one for immunity in the described event, and as such it falls under the condemnation of the statute.

If there could be doubt upon this point, it would be resolved by a consideration of the proviso of § 5, which immediately follows the language condemning contracts, rules, regulations or devices, the purpose of which is to exempt the carrier from liability. It is: "*Provided*, That in any action brought against any such common carrier under or by virtue of any of the provisions of this Act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employé or the person entitled thereto on account of the injury or death for which said action was brought." The practice of maintaining relief departments, which had been extensively adopted, and of including in the contract of membership provision for release from liability to employés who accepted benefits, was well known to Congress, as is shown by § 3 of the act of 1906. On specifically providing in that section that neither such contracts, nor their performance, should be a bar to recovery, Congress inserted

a proviso permitting a set-off of any sum the company had contributed toward any benefit paid to the employé. When in the act of 1908 it enlarged the scope of the clause defining the contracts and arrangements for indemnity which should not prevail, Congress retained the proviso in terms substantially the same. This clearly indicates the intent to include within the statute stipulations which made the acceptance of benefits under contracts of membership in relief departments equivalent to a release from liability. Unless the liability survived the acceptance of benefits, there could be no recovery and hence no occasion for set-off.

It is also insisted that the statute does not cover the agreement in this case, as it was made before the statute was enacted. But that the provisions of § 5 were intended to apply as well to existing, as to future, contracts and regulations of the described character cannot be doubted. The words, "the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act," do not refer simply to an actual intent of the parties to circumvent the statute. The "purpose or intent" of the contracts and regulations, within the meaning of the section, is to be found in their necessary operation and effect in defeating the liability which the statute was designed to enforce. Only by such general application could the statute accomplish the object which it is plain that Congress had in view.

Nor can the further contention be sustained that, if so construed, the section is invalid. The power of Congress, in its regulation of interstate commerce, and of commerce in the District of Columbia and in the Territories, to impose this liability, was not fettered by the necessity of maintaining existing arrangements and stipulations which would conflict with the execution of its policy. To subordinate the exercise of the Federal authority to the continuing operation of previous contracts, would be to place,

to this extent, the regulation of interstate commerce in the
hands of private individuals and to withdraw from the con-
trol of Congress so much of the field as they might choose
by prophetic discernment to bring within the range of their
agreements.   The Constitution recognizes no such limita-
tion.   It is of the essence of the delegated power of regula-
tion that, within its sphere, Congress should be able to
establish uniform rules, immediately obligatory, which as
to future action should transcend all inconsistent pro-
visions.   Prior arrangements were necessarily subject to
this paramount authority.

In speaking of the act in question, this court said that
"the natural tendency of the changes described is to impel
the carriers to avoid or prevent the negligent acts and
omissions which are made the bases of the rights of recov-
ery which the statute creates and defines; and, as whatever
makes for that end tends to. promote the safety of the
employés and to advance the commerce in which they are
engaged," there was no doubt that "in making those
changes Congress acted within the limits of the discretion
confided to it by the Constitution." *Second Employers'
Liability Cases, supra,* p. 50.   If Congress may compel the
use of safety appliances (*Johnson* v. *Southern Pacific Co.,*
196 U. S. 1), or fix the hours of service of employés (*B. &
O. R. R. Co.* v. *Interstate Commerce Commission,* 221 U. S.
612), its declared will, within its domain, is not. to be
thwarted by any previous stipulation to dispense with
the one or to extend the other.   And so, when it decides
to protect the safety of employés by establishing rules of
liability of carriers for injuries sustained in the course of
their service, it may make the rules uniformly effective.
These principles, and the authorities which sustain them,
have been so lately reviewed by this court that extended
discussion is unnecessary.   *Louisville & Nashville Railroad
Co.* v. *Mottley,* 219 U. S. 467.

In that case it appeared that in 1871, in settlement of a

claim for damages for personal injuries, the plaintiffs had entered into an agreement with the railroad company by which the latter promised that during their lives they should have free passes upon the railroad and its branches. It was held that the company rightfully refused, after the passage of the act of June 29, 1906, 34 Stat. 584, c. 3591, further to comply with the agreement, and that a decree requiring the continued performance of its provisions was erroneous. The ground for this conclusion was thus stated (pp. 482–486): "The agreement between the railroad company and the Mottleys must necessarily be regarded as having been made subject to the possibility that, at some future time, Congress might so exert its whole constitutional power in regulating interstate commerce as to render that agreement unenforceable or to impair its value. That the exercise of such power may be hampered or restricted to any extent by contracts previously made between individuals or corporations, is inconceivable. The framers of the Constitution never intended any such state of things to exist. . . . After the commerce act came into effect no contract that was inconsistent with the regulations established by the act of Congress could be enforced in any court. The rule upon this subject is thoroughly established. . . . If that principle be not sound, the result would be that individuals and corporations could, by contracts between themselves, in anticipation of legislation, render of no avail the exercise by Congress, to the full extent authorized by the Constitution, of its power to regulate commerce. No power of Congress can be thus restricted. The mischiefs that would result from a different interpretation of the Constitution will be readily perceived." See also *Addyston Pipe & Steel Company* v. *United States*, 175 U. S. 211, 228; *Armour Packing Co.* v. *United States*, 209 U. S. 56; *Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186.

We find no error in the rulings of which the plaintiff in error complains, and the judgment of the court below is therefore

*Affirmed.*