W. C. NELSON v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 5 November, 1914.)

**Railroads—Relief Departments—Advisory Boards—Final Arbitration—Fraud —Notice of Meetings—Trials—Evidence—Nonsuit.**

It having been held on a former appeal in this case that the plaintiff was concluded by the action of the advisory committee of the defendant railroad company's relief department, when such is not fraudulent or oppressive (157 N. C., 194), by amendment the plaintiff, upon another trial, seeks to invalidate the adverse conclusion of the committee upon the grounds stated, and his evidence tends to show that the committee acted in his absence after failing to notify him, as it had promised to do, of the meeting at which it would consider his claim, and the evidence of the defendant, which was not denied, that its superintendent caused a letter of notification to be mailed him, and it appears that several days thereafter the committee received a letter from plaintiff's attorneys inclosing affidavits upon which he based his claim, without intimating his desire or intention to be present, and there is no evidence that the board did not consider the matter fairly and impartially, or that, under the rules, the plaintiff would have been admitted to its consideration of the question had he been present: *Held*, there was not sufficient evidence of fraud on the part of the committee, and a motion to nonsuit is allowed.

ALLEN, J., concurring in result; HOKE, J., concurring in the opinion of ALLEN, J.; WALKER, J., concurring in both these opinions; CLARK, C. J., dissenting.

APPEAL by defendant from *Daniels, J.,* at March Term, 1914, of PITT. This is a civil action. There was a verdict on a number of issues upon which the court rendered judgment, and the defendant appealed.

*Julius Brown for plaintiff.*
*Harry Skinner and L. G. Cooper for defendant.*

BROWN, J. This case was before this Court at a former term, and is reported in 157 N. C., 194. We refer to that report for a statement of the controversy.

In an elaborate opinion, *Mr. Justice Allen* passed upon every question involved and, in concluding his thorough review of the case, said: "When a member submits his claim to the committee, he is entitled to a hearing, and is not concluded by its action if it is *fraudulent* or *oppressive,* of which the facts on this record furnish no evidence." The opinion clearly holds that there must be other evidence of fraud and oppression than the mere fact that the advisory committee heard plaintiff's appeal in his absence.

When this case was sent back for another trial, plaintiff was allowed to file an amended complaint, charging: "That the pretended hearing and trial before the advisory committee on the plaintiff's appeal conducted by the agents and servants of the defendant company and the officers and agents of the said relief department was a farce and a fraud on the rights of the plaintiff, and was conducted with an unlawful and fraudulent desire, scheme, and purpose to deprive the plaintiff of his just rights under his aforesaid contract, policy, or certificate of membership. And the decision of said advisory committee in hearing said appeal was and is fraudulent, void, and of no effect."

Upon this amendment, the court submitted this particular issue, among many others: "Was the decision and ruling of the advisory committee in plaintiff's appeal, which confirmed the ruling of the superintendent discontinuing the plaintiff's benefits under his certificate, fraudulent and in violation of plaintiff's rights? Answer: Yes."

We have examined this record with care, and find the evidence in all respects substantially the same as on the former trial, and we must therefore adhere to our former ruling that there is no evidence that the advisory board acted fraudulently or oppressively in passing on plaintiff's appeal.

There is not a scintilla of evidence that the plaintiff's appeal was not considered fully and fairly by the advisory committee or that the ten members of the committee, six of whom were selected by the employees themselves, were hostile personally to the plaintiff, or were actuated by any ill-will towards him.

All the evidence shows that the superintendent, Dr. Thomas, mailed plaintiff a letter, of which the following is a copy:

MR. W. C. NELSON,        WILMINGTON, N. C., 26 October, 1905.
        *Bethel, N. C.*

DEAR SIR:—This is to advise you that the next meeting of the advisory committee of this department will be held on the 4th day of November, and that if you have any additional affidavits you wish to have presented to that meeting, you should forward them at once. You will not be expected to appear in person.

                                    Yours very truly,        G. G. THOMAS.

The deposit of this letter in the postoffice raises a presumption that the plaintiff received it. *Trust Co. v. Bank,* 166 N. C., 112. There seems to be nothing to rebut such presumption. *Bragaw v. Lodge,* 124 N. C., 154. . Plaintiff does not on cross-examination really deny receiving this letter, for he said: "I won't say whether I received this letter; I don't know."

Assuming, however, that the presumption that the letter was received has been rebutted, or there is evidence to justify a finding that the plaintiff would have been present at the hearing in November, there is no evidence, as pointed out in *Justice Allen's* opinion on the other appeal, that he was deprived of such opportunity by any fraud or oppression upon the part of Dr. Thomas or any other agent of defendant company.

Yet it is a most significant and admitted fact that, as requested by Dr. Thomas in the above letter, plaintiff's attorney forwarded to him for the advisory committee on 30 October, 1905, four days after date of the Thomas letter, additional affidavits, with a letter reading as follows:

BETHEL, N. C., 30 October, 1905.

DR. G. G. THOMAS,
    *Wilmington, N. C.*

DEAR SIR:—I am inclosing you affidavits of Dr. F. C. James, M. O. Blount, and W. J. James as to W. C. Nelson's physical condition. Trust that you will, or you and the committee will reinstate him to his benefits so as to prevent legal proceedings, as will have to be resorted to if the department continues to act as it is at present.

If the committee should reject or disallow Mr. Nelson's benefits, then please return papers and affidavits filed in said matter.

Yours truly,      JULIUS BROWN.

It is manifest from this letter that the plaintiff claimed no right, and manifested no purpose to be present before the committee on 4 November. According to the rules and regulations, those hearings on appeal were had upon affidavits, and there is no evidence whatever that plaintiff's affidavits were not weighed and considered by the committee.

Assuming for argument's sake that the plaintiff had a right, under the rules and regulations of the association (which is by no means manifest) to be present when his appeal was heard, the letter from his attorney is a manifest waiver of such right, and the committee had good reason to assume, when such letter and accompanying affidavits were laid before them, that plaintiff had no intention of being present.

There being no evidence of fraud or oppression, as heretofore held by us, upon the part of the advisory committee, we must adhere to what is so well said by *Mr. Justice Allen* in this case: "We will not quote fur-

ther from the cases cited, and there are others to the same effect, but they sustain fully the contention of the defendant, that it was the duty of the plaintiff to seek redress inside the department, and that the decision of the advisory committee upon his appeal is conclusive upon him. The doctrine seems to us to be reasonable and just, and necessary to the maintenance, in benefit societies and fraternal orders, of provisions conferring benefits on sick or disabled members."

The motion to nonsuit is allowed.

Reversed.

ALLEN, J., concurring in the result: The contention of the plaintiff is that the defendant promised to let him know when the hearing would be had before the advisory committee, and failed to do so, and that this constituted fraud. There is no controversy upon the record that a letter was mailed by the defendant to the plaintiff, notifying him of the time and place of the hearing, and there is strong evidence that this letter was received; but if it was not, the defendant performed its promise by mailing the letter, and its miscarriage in the mails cannot furnish evidence of fraud.

The question of fraud ought, therefore, to be eliminated from the case, and if this is done it appears that when the case was heard on the former appeal it was held by this Court that the action of the advisory committee was final in the absence of fraud, and the only facts which tend to differentiate the present appeal from the former is that the plaintiff complains that the defendant promised to notify him of the time and place of the hearing, and failed to do so. It appears, however, from the record that no provision is made in the rules and regulations of the relief department for the plaintiff to be present at the hearing; and if he had been there, he would have had no right, except to present his affidavits and evidence, and the record shows that his affidavits were sent to the advisory committee four days before the hearing. His failure, therefore, to be present, he having been afforded an opportunity to present his evidence, could not be prejudicial to his rights and would not justify a reversal of the judgment.

The failure to give notice in this instance·has worked no harm.

HOKE, J., concurs in this opinion.

WALKER, J., concurring: I concur in the opinion of the Court and also in the opinion of *Justice Allen*, as I think that his concurring opinion deals more fully, argumentatively, and conclusively with the special matter he considers and the rest of the case presented in it. It is not a question of protracting litigation, but of doing justice according to the rules of law, however long it may take.

CLARK, C. J., dissenting: The jury found upon the evidence, and on the issues duly submitted, that the plaintiff requested the defendant to notify him of the date and place when the said advisory committee would hear his said appeal; that the defendant promised the plaintiff that it would give him such notice; that his appeal was heard by the committee on 4 November, 1905, but that the committee gave the plaintiff no notice; and further, that if plaintiff had had notice, he would have attended the hearing of his appeal before the committee on 4 November, 1905, and that the decision and ruling of the advisory committee on plaintiff's appeal, which confirms the ruling of the superintendent discontinuing the plaintiff's benefits under his said certificate, was "fraudulent and void"; that the plaintiff was injured in the employment of the defendant, as alleged in his complaint, on 6 September, 1902, and that by reason of his certificate of membership and contract he was entitled to recover of the defendant therefor the sum of $909.50.

Upon these findings of fact the judgment of the able and learned judge who tried this cause should be affirmed.

This case was first brought to this Court 147 N. C., 103. It was again before the Court 157 N. C., 194.

This proceeding was brought under the *Relief Department,* which was a system under which the defendant compelled all its employees to contribute monthly a sum which constituted a fund, controlled by the defendant's officers, out of which employees injured by the negligence of the defendant were made to pay the damages for their own injuries. This system has been heretofore described in this case, 157 N. C., at p. 208, and also in same volume at pp. 66-69, which description need not be repeated. It was held to be in violation of the Employers' Liability Act, Rev., 2646, in *Barden v. R. R.,* 152 N. C., 318, and though that case was partially overruled by the majority opinion in *King v. R. R.,* 157 N. C., 44, such "Relief Departments" were afterwards declared invalid in *R. R. v. McGuire,* 219 U. S., 549, and *Schoubert v. R. R.,* 224 U. S., 603, under a similar act, though in those cases, unlike this, the employees were not required to join the relief department. And also in the Federal Employers' Liability Act of 22 April, 1908, there is a provision almost identical with our Revisal, 2646.

This proceeding, it is true, is not to hold the contract invalid, but to enforce an agreement under it by which in return for the payments made by the employees the plaintiff was to receive compensation, out of the fund thus created, for injuries sustained by him in the course of his employment.

Daniel Webster defined "due process of law" as "that law which proceeds only upon inquiry, which hears before it decides, and renders judgment only after trial." Upon the findings of fact by the jury in this

case the plaintiff has been denied that right. He was not only entitled to a hearing of the appeal by the committee as a matter of common right, but the jury find that he was promised such hearing and notice thereof, but, notwithstanding such promise, his appeal was heard without notice given him, though he would have attended if given notice. This makes such action "fraudulent and void." Even if it did not, it entitled the plaintiff to be heard by the jury.

The strength of the appeal is really rested on the exception that the motion for a new trial upon the ground that the verdict was "against the weight of the evidence" was denied by the judge below. This is not ground of appeal, though it is set out in the exceptions in this case and really sums up the defendant's contention, which is shaded into an argument that there is no evidence. The evidence of Dr. Thomas, witness for the defendant, is that he dictated but did not sign the notice to defendant, that he "would not swear such notice was deposited in the mail," and no one else swore it. The plaintiff swore positively that he "did not receive any such letter."

The jury thought, not unnaturally on such testimony, that there was a preponderance of evidence for the plaintiff, and twelve men who were charged by law with finding the fact have upon their oaths returned the verdict. *Judge Daniels* refused to set aside the verdict on the allegation of the defendant that the verdict was "against the weight of the evidence." The only direct and positive testimony was for the plaintiff, and the jury believed him.

There is nothing whatever that calls in question the validity of the finding of the jury that the plaintiff was in fact damaged to the extent of $909.50 on 6 September, 1902, while in the employment of the defendant, and we have held in *Burnett v. R. R.,* 163 N. C., 190, following the decisions in *R. R. v. McGuire,* 219 U. S., 549, and *R. R. v. Schoubert,* 224 U. S., 603, that the acceptance of benefits from the Relief Department does not prevent the plaintiff from recovering damages in a court of law, because the stipulation in the contract against such resort is invalid. When an injury of this kind is sustained, the party injured should have the speediest and promptest recovery. They are generally in needy circumstances, and whatever recompense is due them should be speedily paid. This is elementary justice. Such claimants can usually secure counsel only on credit, while the defendant, with (as we know from the facts in *Goldsboro v. R. R.,* 155 N. C., 364) more than $223,000,000 of property, is able to furnish an unlimited number of counsel. In this case the defendant was injured more than twelve years ago, and has as yet been unable to secure payment of the damages which the jury say he sustained at that time, of $909.50. This same defendant, in *Penny v. R. R.,* 161 N. C., 530, procured a new trial in this Court after four

successful verdicts in favor of the plaintiff, approved by four Superior Court judges. We must take it that, as presented, each of these four new trials was properly granted; but this illustrates the inability of claimants in a matter of this kind getting a speedy decision in their favor and the ability of such defendants to allege and prove error. In a more recent case, *Mott v. R. R.,* 164 N. C., 367, this same defendant held off another trial eight years after summons issued before a jury trial could be had. The courts ought not to be blind to the fact that employees in straitened circumstances have not equal advantages in presenting their claims against powerful defendants without some technical irregularity being discovered or pointed out by numerous and able counsel. These three are doubtless but a few instances of the many in which exhausted plaintiffs in such contests with their powerful opponent have been compelled to abandon or compromise their just rights. We must presume that the courts in each case did what was right upon the facts and the law as presented to them, but we must consider the immense advantage to the defendant and the disadvantage to the plaintiffs in procuring the means to have their causes presented in a court of justice. The jury and the judge in this case have found that the plaintiff was deprived of his just rights in this matter by means that were fraudulent and void, and there is ample evidence to sustain that view of the judge and jury, as above set out.

In a much cited instrument (*Magna Carta*) King John was forced by the insurgent barons to promise that "justice should not be delayed" to any freeman, but they forced him to promise that in suits against themselves they should be tried by their fellow barons only, and not in the king's courts. Such instances of protracted litigation at the hands of powerful defendants should not go unnoticed by the courts.

When this case was before us, 157 N. C., 194, the Court held that the plaintiff was entitled to a hearing before the committee. The jury have found by their verdict upon the evidence (which *Judge Daniels* held was not inferior in weight to that of the defendant) that the plaintiff has not had such hearing and was fraudulently deprived of it. Indeed, the weight of evidence was, as the jury found, decidedly in favor of the plaintiff, for Dr. Thomas would not swear that the letter was put in the mail, and therefore no presumption arose even that it was delivered, and the plaintiff swore positively that he did not receive the letter.

Upon such testimony the action of *Judge Daniels* in refusing to set aside the verdict was, in my opinion, proper and just.