Johnson, J.
The assailants of this judgment assert the invalidity of Sections 9012, 9013 and 9014, General Code, for several reasons. Pertinent parts of those sections are as follows:
“Sec. 9012. No corporation directly or indirectly shall compel or require an employe to join any company or association whatsoever, or withhold any part of an employe’s wages or his salary for the payment of dues or assessments in any society or organization, or demand or require either as a condition precedent to securing employment or being employed,” etc.
Section 9013 in substance prohibits the making of any agreement by a railroad company with an employe by which he agrees to waive any right to damages thereafter arising for personal injury or death, or any other right, and Section 9014 provides that all rules, regulations, stipulations and agreements declared unlawful by the next three *317 preceding sections are void. A corporation, association or person violating, or aiding or abetting the violation of either of such sections, for each offense shall forfeit and pay to the person thus wronged or deprived of his. rights not less than fifty nor more than five hundred dollars, to be recovered by a civil action.
Each of the causes of action set up by the plaintiff is predicated upon the allegation that the defendant illegally and against plaintiff’s wishes deducted and withheld from his pay the sum of four dollars for the payment of dues in the relief department.
The question whether the plaintiff was required by the defendant to join the relief association, as a condition of employment, or did so voluntarily, is unimportant in this proceeding, except in so far as it is connected with the question whether the defendant deducted the amount from plaintiff’s pay against his wishes. He joined more than one year before this suit was begun, and, therefore, any cause of action for penalty because of being compelled to join was barred at that time.
The defendant urges that this very relief department was held to be lawful in the case referred to in its answer, The State, ex rel., v. The Baltimore & Ohio Rd. Co., 88 Ohio St., 539. The judgment of the circuit court in that case was affirmed on the authority of P., C., C. & St. L. Ry. Co. v. Cox, 55 Ohio St., 497. In the case last referred to the facts of the case are stated in the syllabus as follows:
“An employe of a railroad company, voluntarily, and with full knowledge of the character and effect *318 of the contract he was assuming, applied for admission to an association composed of the company and a portion of its employes, called the ‘Voluntary Relief Department,’ and being admitted, contracted that the company might deduct from his wages the sum of seventy-five cents per month for the purpose of forming, with other like contributions by other employe members, and contributions, which by the contract the company was obliged to make, a relief fund for the benefit of the employes in case of sickness, accident or death; and contracted, further, that in case of accident, the acceptance by him thereafter of relief from the relief fund so accumulated should have the effect to release the company from liability for damages:
“Held, 1. Such contract is not interdicted by the act of April 2, 1890, 87 O. L., 149, ‘for the prptection and relief of railroad employes,’ etc. 2. The contract is not contrary to public policy. 3. The contract does not lack mutuality. 4. It is based upon a valid consideration.”
Afterwards a quo warranto proceeding was brought to oust the Pennsylvania Company from operating its relief department on the ground that the company was conducting an insurance business and that its contracts were against public policy. (The State, ex rel., v. The P., C., C. & St. L. Ry. Co., 68 Ohio St., 9.) The court sets, out that the association maintained a fund which was created and accumulated by the voluntary contributions from their wages by employes who had applied for membership and that the fund was used for the beneficial purposes stated. The court held that *319 the acts of the company were within its implied powers and were not ultra, vires nor contrary to public policy. Subsequently the legislature passed what is now Section 9010, General Code, which prohibits any railwajr company from establishing or maintaining a relief society which requires its employes to become members thereof, or to enter into an agreement, directly or indirectly, whereby they stipulate to surrender or waive a right of damages against the company for personal injuries or death, or surrender any other right.
It must be said, therefore, with reference to the contention that it has been adjudicated that this relief association is a lawful one — and, therefore, that a judgment to the contrary now would be ex post facto and in violation of the constitution, and that an act of the general assembly under which this particular relief association will become unlawful is retroactive — that the extent to which the adjudications went was that where, as the law then was, the employe “voluntarily, and with full knowledge of the character and effect of the contract he was assuming,” became a member of the voluntary association, the contract was valid.
Now, in this case the petition contains the express averment that the deduction was made from plaintiff’s wages illegally and against the plaintiff’s wishes.
The second defense of the answer makes the direct issue that defendant withheld the amount named from the salary of plaintiff at the request and by the authority of plaintiff, and denies all the other allegations of the petition. This was the *320 issue tried to the jury. Considerable documentary arid oral testimony was introduced in evidence touching this issue. It was resolved by the jury in favor of the plaintiff.
We are bound, therefore, to conclude that these deductions were not made from time to time by the consent, request and authority of the plaintiff, but were made against his consent, and were not voluntary contributions on his part. Therefore, the conduct and management of this relief, department, so far as this plaintiff is concerned, were not such as were approved and held to be legal by the adjudications of this court referred to.
The emphasis placed by the court in P., C., C. & St. L. Ry. Co. v. Cox, supra, upon the fact that the contract of the plaintiff employe in that case was made voluntarily, and with full knowledge of the character and effect of the contract he was assuming, raises a distinct implication that the conclusion announced was as far as the court felt that it was justified in going in the case then before it. There was not applied in the case at bar any retroactive or ex post facto law or adjudication.
Moreover, even if an involuntary relief association had been permitted to conduct its operations prior to the passage of these statutes, that would not justify their continuance thereafter, nor render the statutes invalid or inoperative as. to such association. Contracts and undertakings of the nature of those here in question, made by such associations, which fall within .the inhibition of *321 statutes afterwards passed by the general assembly in the exercise of its police power, would thereby become ineffective. L. & N. Rd. Co. v. Mottley, 219 U. S., 467, and P., B. & W. Rd. Co. v. Schubert, 224 U. S., 603.
It is also contended that these statutes violate the 14th Amendment to the Constitution of the United States. It is sufficient as to this to say that a similar contract was under investigation by the supreme court of the United States in C., B. & Q. Rd. Co. v. McGuire, 219 U. S., 549. McGuire was an employe of the company and a member of its relief association. After his injuries he accepted benefits to the extent of $822. In reference to the Iowa statute concerning relief associations, which is similar to the Ohio statute, the federal supreme court held in the McGuire case that a state has power to prohibit contracts limiting liability for injuries, made in advance of the injuries received, and to provide that the subsequent acceptance of benefits under such contracts shall not constituid satisfaction of the claim for injuries received after the contract, and that such a statute does not impair the liberty of contract guaranteed by the 14th Amendment.
Statutes prescribing penalties for violation of regulatory laws are familiar and their validity established when found reasonable. C., S. & C. Rd. Co. v. Cook, 37 Ohio St., 265; Seaboard Air Line Ry. v. Seegers, 207 U. S., 73; Western Union Telegraph Co. v. James, 162 U. S., 650; L. S. & M. S. Ry. Co. v. Ohio, 173 U. S., 285.
*322 Counsel for plaintiff in error earnestly insist that the federal congress has legislated on the subject as respects interstate commerce by the act of April 26, 1908, the Employers’ Liability Law, and that the regulations prescribed by that law are exclusive. By reason of which it is asserted that the provisions of Sections 9012, 9013, 9014, General Code, can no longer have any effect with relation to interstate commerce. The provisions of the Federal Employers’ Liability Law, which it is contended have this effect, are as follows:
“Sec. 5. Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void: Provided, That in any action brought against any such common carrier under or by virtue of any of the provisions, of this Act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief, benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.” (35 Stats, at Large, 66, c. 149.)
The position taken is that this legislation precludes any action by the states touching relief associations in the manner provided by the Ohio statutes here involved. It is said that the Ohio statute is inconsistent with the policy established by congress; that the federal act, after declaring void all contracts exempting carriers from liability thereby created, instead of giving employes the *323 right to recover penalties on account of such contracts, provides for a set-off against their claims for injuries, etc., of any sums, the carrier has contributed or paid in relief, benefit or indemnity that may have been paid, to the injured employe.
It is elementary that in matters in which congress and the state legislatures have concurrent jurisdiction, the state may legislate until such time as congress acts upon the subject. When the power of congress is exercised that of the state is superseded; and it has been determined in a number of cases by the United States supreme court that the Federal Employers' Liability Act supersedes the common law and the statutes of the states relating to the liability of railroads for injuries to their employes while engaged in interstate commerce. (Mondou v. N. Y., N. H. & H. Rd. Co., 223 U. S., 1, and New York Central Rd. Co. v. Winfield, 244 U. S., 147.) But it is equally well settled that when power was conferred upon congress to regulate commerce between the states it was not intended to cut the states off from the exercise of their police power in prescribing regulations relating to the health, morals, safety and welfare of the citizens, although the regulations might indirectly affect the commerce of the country. Sherlock et al. v. Alling, Admr., 93 U. S., 99, 103.
In referring to the rules which should determine when a federal statute regulating commerce will be held to supersede state legislation in the exercise of police power, Mr. Justice Hughes, in Savage v. Jones, 225 U. S., 501, says at page 525: “When the local police regulation has real relation to the *324 suitable protection of the people of the State, and is reasonable in its requirements, it is not invalid because it may incidentally affect interstate commerce, provided it does not conflict with legislation enacted by Congress pursuant to its constitutional authority.” (Citing many cases.) He further says, at page 533: “If the purpose of the act cannot otherwise be accomplished — if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect — the state law must yield to the regulation of Congress within the sphere of its delegated power.” (Citing cases.) And, further, on the same page: “But the intent to supersede the exercise by the State of its police power as to matters not covered by the Federal legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulation and to occupy a limited field. In other words, such intent is not to be implied unless the act of Congress fairly interpreted is in actual conflict with the law of the State. This principle has had abundant illustration.” (Citing many cases.)
In Atlantic Coast Line Rd. Co. v. State of Georgia, 234 U. S., 280, it was held that congress did not by the passage of the federal safety, appliance act, dealing with the equipment of locomotives as well as of cars, and the act regulating commerce, preclude the states from legislating concerning locomotive headlights, as to which congress had not specifically acted.
In Savage v. Jones, supra, it was held that the passage by congress of the food and drug act of *325 1906, which prohibited misbranding, did not prohibit the states from regulating the sale and requiring to be affixed a statement of ingredients and minimum percentage of fats and proteins.
In M., K. & T. Ry. Co. v. Haber, 169 U. S., 613, it was held that the federal animal industry act, making it a misdemeanor for any person or corporation to transport cattle known to be affected with contagious disease, did not prevent a state from imposing a civil liability for damages sustained by owners of domestic cattle by reason of the importation of such diseased cattle. In that case it is declared in the syllabus that “The provision in the Kansas act imposing such civil liability is in aid of the obj’ects. which Congress had in view when it passed the Animal Industry Act, and it was passed in execution of a power with which the State did not part when entering the Union, namely, the power to protect the people in the enjoyment of their rights of property, and to provide for the redress of wrongs within its limits, and is not, within the meaning of the Constitution, nor in any just sense, a' regulation of commerce among the States.”
In M., K. & T. Ry. Co. v. Harris, 234 U. S., 412, a statute of a state was. upheld which gave the right to collect an attorney’s fee where small freight claims were not promptly paid by the railroad, although the claims arose out of interstate shipments, and although the Carmack Amendment makes provisions for damages to be recovered by shippers of interstate freight. The supreme court held that the two acts were not inconsistent and *326 that the state statute did not interfere with interstate commerce, although affecting it. In the syllabus it is held:
“A state police regulation designed to promote the payment of small but well founded claims and to discourage litigation in respect thereto, and which only incidentally includes claims arising out of interstate commerce, does not constitute a direct burden on interstate commerce, and is not, in the absence of legislation by Congress on the subject, repugnant to the commerce clause or otherwise in conflict with Federal authority.
“While the Carmack Amendment supersedes state legislation on the subject of the carrier’s liability for loss of interstate shipments, it does not interfere with a state statute incidentally affecting the remedy for enforcing that liability, such as a moderate attorney fee in case of recoverable contested claims for damages.”
In P., C., C. & St. L. Ry. Co. v. Miller, 120 N. E. Rep., 706, decided by the supreme court of Indiana, which is here cited by the plaintiff in error, the plaintiff sued to recover wages earned by him in the employ of the company and retained by it as contributions to a voluntary relief fund. The answé’r of the company contained allegations, admitted by the demurrer of the plaintiff, that the employe voluntarily applied for membership and voluntarily permitted it to retain a portion of his wages each month as a contribution to the relief fund; and that the companies and the employes associated together as a voluntary relief association were engaged in interstate commerce. The *327 court held that the federal statute (the same section as the one here relied on) “impliedly permits the existence of railroad employes’ relief associations, contributed to by both the railroad and employes, and invalidates only those provisions of an employe’s contract of membership therein which release the railroad company from liability.”
The “contribution” in that case was made by the employe voluntarily after voluntary application for membership made by him.
The federal statute declares void any contract or device whatsoever to exempt a carrier from any liability created by the Federal Employers’ Liability Act, but provides that in any action brought against such common carrier under the act it may set off therein any sum it has contributed or paid to any insurance, relief benefit or indemnity, that may have been paid to the injured employe.
The Ohio statute likewise prohibits the making of any contract to exempt the company from liability to the employe, and prevents the company from compelling employes, to join any association or from withholding any part of the employe’s wages for the payment of dues in any society or association.
In New York Central Rd. Co. v. Winfield, supra. the scope of the Federal Employers’ Liability Act was involved, and the court, referring to previous cases, says: “It is pointed out that the subject which the act covers is ‘the responsibility of interstate carriers by railroads to their employes injured in such commerce.’ ”
*328 There is nothing whatever in that act, or any other to which our attention has been called, by which congress in any wise regulates relief departments, whether voluntary or involuntary. That is a subject wholly aside from that of giving rights of action for injuries while engaged in interstate commerce. But congress provided that if the railroad company has contributed to any insurance, relief benefit or indemnity, that may have been paid to the injured employe, it may set off that amount in the plaintiff’s action for damages on account of the injury. It is easy to understand that an employe may desire to and may actually join a voluntary relief association and may willingly arrange to contribute to it. And if the company has actually contributed toward the payment of insurance to an injured employe, it may set off the amount so paid in an action against it on account of the injury or death of the employe. The Ohio statute here in question does not abridge or affect in any way the rights of action secured by the federal act or the procedure under it. The provisions of Sections 9012 and 9014, General Code, on which this suit is predicated, simply prevent a company from compelling an employe to join any association or from withholding any part of his wages for payment of dues, and prescribe the penalty for violation thereof. They do not in any way conflict with the provisions of the federal act. As said by the federal supreme court in Savage v. Jones, supra: “There is no question here of conflicting
standards, or of opposition of state to Federal authority.” And to the same effect is Merchants’ *329 Exchange v. Missouri, 248 U. S., 365, decided January 7, 1919.
In P., B. & W. Rd. Co. v. Schubert, 224 U. S., 603, there is included in the syllabus the following:
“Congress has power to enforce the regulations, validly prescribed by the Employers’ Liability Act of 1908, by the provisions of § 5 of the act providing that exemptions from liability shall be void, and that the acceptance of benefits under a relief contract shall not be a bar to recovery.
“In framing the Employers’ Liability Acts of 1906 and 1908 Congress well understood the practice of maintaining relief departments, and by the statute of 1908 Congress enlarged the scope of the clause defining contracts for immunity which should not prevail, and included stipulations which made acceptance of benefits from such relief departments a release from liability.”
Having in mind such relief departments congress “enlarged the scope of the clause defining contracts for immunity which should not prevail.”
It must be kept in mind that in this case the plaintiff is not suing to recover damages for injuries. He sues for a penalty fixed against the company for withholding part of his wages from him against his consent for the payment of dues in the association.
Congress has denounced all contracts of every kind to exempt a company from liability for injury, but allows a set-off of any amount contributed to insurance that has been paid to the injured employe.
*330 We do not think that we would be justified in holding that congress has thereby impliedly permitted involuntary associations, which employes are required to join, and to which they are compelled to pay dues, and has prevented the state by implication from prohibiting such compulsion and such withholding by an exercise of its police power for the protection of its citizens.
Such an implication would not only be strained, but would be contrary to the obvious spirit of the federal statute in which the provisions are found.

Judgment affirmed.

Jones, Matthias, Donahue and Wanamaker, JJ., concur.
Robinson, J., not participating.