Norman C. Norman, Appellant, v. The Baltimore and Ohio Railroad Company, Respondent.

**38**

(Argued June 1, 1934; decided July 3, 1934.)

*Emanuel Redfield* and *Dalton Dwyer* for appellant.

*Frederick H. Wood, Carl A. de Gersdorff, H. F. McGuire* and *N. H. Josephs* for respondent.

POUND, Ch. J.   The point for decision in this case depends upon the constitutionality of the Joint Resolution of Congress known as Public Resolution No. 10 of the Seventy-third Congress, entitled " Joint resolution to insure uniform value to the coins and currencies of the United States," approved June 5, 1933 (Mason's U. S. Code, tit. 31, ch. 8, § 430-4; 48 Stat. 112), as related to the standard gold clause contained in a corporate bond issued by defendant for payment of principal and interest " in gold coin of the United States of America of or equal to the standard of weight and fineness existing on February 1, 1930."

The action is on a bond coupon calling for payment of $22.50.   The complaint demands payment in gold, or its

equivalent which was alleged to be $38.10. Judgment was directed for $22.50, called for on the face of the coupon.

Defendant interposed as a defense Public Resolution No. 10, above cited, by which it was authorized and required to discharge the principal and interest of such bond and coupon in any coin or currency of the United States which at the time was legal tender for public and private debts and not otherwise. The court refused to strike out such defense.

In view of the enormous property value at stake and of the possibility that Congress may stamp as legal tender such a vast quantity of paper money as potentially to destroy the value of all past promises to pay in the future, the decision of the Supreme Court of the United States on the question will be fraught with the gravest results. It is becoming that we should express our views on the question, even though the ultimate decision rests with the court of last resort on questions arising under the Federal Constitution.

No controlling authority may be found for the rule that the money power of Congress may make public currency legal tender for obligations expressly limited to payments in gold. (Cf. *Matter of Missouri Pacific R. R. Co.*, U. S. Dist. Ct., Missouri, decided June 20, 1934, 7 Fed. Supp. 1.) The constitutionality of such legislation is sought to be found in the delegated powers of Congress and the implied powers deduced therefrom. We must reason from the Constitution and decided cases to reach our conclusion.

Congress has power " to coin Money, regulate the Value thereof." (U. S. Const. art. I, § 8, ¶ 5.) It also has power to enact laws necessary to enforce the Constitution. (U. S. Const. art. I, § 8, ¶ 18.) It also has the power prohibited to the States (U. S. Const. art. I, § 10, ¶ 1), to impair contracts by the exercise of its lawful powers. ( *Knox* v. *Lee*, 12 Wall. [U. S.] 457.)

The contract sued on is payable in coin and not in commodities. (*Trebilcock* v. *Wilson*, 12 Wall. [U. S.] 687.) It is a contract to pay money, none the less because it designates gold coin rather than other kinds of money which the law has made a legal tender in discharge of money obligations. (*Thompson* v. *Butler*, 95 U. S. 694, 696, 697.)

The power to coin money and the general powers of sovereignty permit Congress to " make the notes of the government a legal tender in payment of private debts * * * [as] ' necessary and proper for carrying into execution the powers vested by the constitution in the government of the United States.' " The question of the economic significance of the money power of Congress is a political one and not a judicial question to be passed upon by the courts. (*Juilliard* v. *Greenman*, 110 U. S. 421, 450.)

The rule seems well established that Congress may establish a uniform national currency, declare of what it shall consist, endow that currency and every unit thereof with the character and qualities of money having a defined legal value by requiring its acceptance at its face value, as legal tender in the discharge of all debts, whether preexisting or subsequently incurred, and to regulate the value of such money, unless by so doing property is or may be taken without due process of law.

It is contended that to subordinate the exercise of the Federal authority to the continuing operation of previous contracts would be to place, to this extent, the power to coin money and regulate its value in the hands of private individuals and thus to impair the sovereign power delegated to the national government. (*Philadelphia, B. & W. R. R. Co.* v. *Shubert*, 224 U. S. 603.)

Considerations of convenience are not without weight. All arrangements for payment in money in the future are necessarily under the paramount authority of the political sovereign delegated powers of Congress. The

courts should not interfere with the economic policies adopted by Congress, if such powers are vested in that body. Those who would affirm the unconstitutionality of an act of Congress must do more than raise a doubt; they must do more than establish the unwisdom of the legislation; they must show clearly that it is in violation of the provisions of the Constitution.

State courts should uphold the constitutionality of such acts of Congress whenever possible. If the gold clause in contracts is an interference with the ability of the government to accomplish legitimate results it may well be urged that Congress may remove such interference without regard to consequences. The choice of the means to accomplish a lawful purpose is a matter for Congress as long as the means are fairly related to the end. The scope of the money power of Congress is so wide that this court will not, in the case presented, venture to invalidate the legislation directed to that end.

The judgment should be affirmed, with costs.

CRANE, LEHMAN and HUBBS, JJ., concur; O'BRIEN, J., dissents and votes to reverse; CROUCH and LOUGHRAN, JJ., not sitting.

Judgment affirmed.