UNIVERSAL GAS CO. v. CENTRAL ILLI-
NOIS PUBLIC SERVICE CO. et al.

No. 6725.

Circuit Court of Appeals, Seventh Circuit.

Feb. 3, 1939.

Rehearing Denied March 27, 1939.

Samuel D. Royse, of Terre Haute, Ind., George B. Gillespie, Edmund Burke, and Louis F. Gillespie, all of Springfield, Ill., and Paul Y. Davis, Kurt F. Pantzer, Ernest R. Baltzell, and William G. Sparks, all of Indianapolis, Ind., for appellant.

Gray Herndon, of Springfield, Ill., for appellees.

Ralph D. Stevenson, of Chicago, Ill., and A. D. Stevens, Gray Herndon, and Elmer Nafziger, all of Springfield, Ill., for appellee Central Illinois Public Service Co.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a decree of the District Court, dismissing plaintiff's suit, after a hearing on its amended and supplemental bill in equity and of the answers thereto. The complaint alleged that Indiana Consumers' Gas and By-Products Company (the predecessor of Universal Gas Company, herein referred to as plaintiff), on or about June 25, 1932, entered into a contract with Central Illinois Public Service Company, one of the defendants, by which it agreed to sell and deliver to said defendant, in its pipe line at the Indiana-Illinois state line, all natural gas required by said defendant in the operation of defendant's gas public utilities in the Cities of Paris, Charleston, Mattoon, Effingham and other cities, villages and communities in Illinois, along and adjacent to defendant's gas transmission line for a period of fifteen years. The contract in question, as well as the supplemental contract dated July 12, 1932, was attached as exhibits to the complaint. At the time of the execution of these contracts, plaintiff was supplying manufactured gas to the defendant for distribution in this same territory under contracts, the terms of which did not expire until November 1, 1949.

By the contract in suit, the parties expressed their desire to substitute natural for manufactured gas and provided that their obligations under the manufactured gas contract should cease as of that date upon which delivery of natural gas by plaintiff to defendant should commence under the agreement. Provisions were made with respect to quality, price, measurement, terms of sale, failures in delivery, for action in case of seller's inability to perform conditions and various other details regulating the rights and obligations of the parties subsequent to the commencement of delivery. The contract, as alleged in the complaint, then concluded as follows:

"15. The term of this agreement shall be the period of fifteen (15) years next following the date hereof.

"16. This agreement is entered into by Central Illinois subject to the approval of the Illinois Commerce Commission, and delivery of natural gas by Indiana Consumers, and acceptance thereof by Central Illinois, under this agreement shall commence as soon as practicable and within sixty (60) days next following such approval."

The plaintiff alleged that after the execution of said agreement said defendant filed with the Illinois Commerce Commission a petition for approval thereof; and that, while said petition was pending, said defendant began receiving natural gas from plaintiff instead of the artificial gas which defendant had previously received; and that defendant continued to receive natural gas and to pay plaintiff therefor the price fixed in said contract until some time in the year 1936, when the Illinois Commerce Commission entered an order disapproving the contract; and that by reason thereof, defendant had waived the condition in the contract requiring approval by the Commission.

By supplemental bill, plaintiff added to its complaint an allegation that defendant had refused to pay the cost of operating a compressor which plaintiff had installed at Paris, Illinois, for the purpose of increasing the amount of gas conveyed through defendant's pipe line west of that point. The defendant answered denying that it had waived the requirement for approval of the contract by the Illinois Commerce Commission and denying that anything that had been done was intended or understood by either of the parties as waiving that requirement, and alleging that the plaintiff was obligated to pay the cost of operating the compressor above mentioned.

The case was heard and decided upon the oral testimony of witnesses and numerous exhibits in connection with an interpretation of the contract in question. The issues were determined in favor of the defendant and as a result, plaintiff brings this appeal.

The contested issue revolves largely about the construction to be given Paragraph 16 of the contract. It is the contention of the plaintiff that the language in such paragraph "subject to the approval of the Illinois Commerce Commission" constitutes a condition precedent, and that defendant, by its acceptance of natural gas prior to the approval of the Commerce Commission, waived such provision and therefore it can not be relied upon as a defense, and that in any event, defendant, by its acts and conduct, is estopped from denying such waiver. On the other hand, it is defendant's contention that the language in controversy was intended as a continuing requirement, but even if the provision be construed as a condition precedent, there was no intention on the part of the defendant to waive it and in fact, no waiver was shown, and that the plaintiff is in no position to invoke the doctrine of estoppel as to defendant's right to deny waiver. There is also involved as a contested issue, the question as to whether plaintiff or defendant assumed the burden of increasing the pressure on defendant's pipe line and the cost of operating the compressor installed for such purpose.

■ For the purpose of our discussion, we shall assume that plaintiff's contention that "subject to the approval of the Illinois Commerce Commission" is a condition precedent. In fact, we think it is such a condition. If such it be, then plaintiff's action is maintainable only upon the theory that such condition was waived by the defendant. In order to establish such waiver, plaintiff relies largely upon the act of the defendant in accepting natural gas from the plaintiff prior to the approval of the contract by the Commerce Commission and for nearly four years continuing to accept gas, and a recognition by the defendant of the terms of the contract in various particulars and by the further claim that the defendant misled the Commerce Commission as to the adequacy of the gas supply furnished by the plaintiff so as to prevent an approval of the contract by the Commerce Commission. Inasmuch as the question of waiver is generally one of fact (Vol. 27, R.C.L. 912), and under the well established rule[1] that this court is bound by the finding of the trial court upon such questions, where predicated upon substantial evidence, it becomes important to consider the conclusion of the trial court in this respect.

Finding No. 16 is: "that by receiving natural gas instead of artificial gas before said contract had been approved by the Illinois Commerce Commission, Central Illinois Public Service Company did not intend to, and did not, waive or modify the express provision of said contract of June 25, 1932 that it was made and entered into subject to approval by said Commission; and that neither of said parties understood or intended that the delivery and acceptance of natural gas prior to such approval by the Illinois Commerce Commission should alter the contract of June 25, 1932, or that it should constitute a waiver of the express proviso or condition of that contract with reference to approval by said Commission, but that both said parties intended that for the time being they should proceed in accordance with the provisions of that contract until the Illinois Commerce Commission should reach a decision as to the approval of said contract, and each of them intended to take their chances upon ultimate approval of said contract by said Commission."

Finding No. 19 is: "That subsequent to the 11th day of August, 1932, there was no conduct, representation or action by either of the parties to said contract of June 25, 1932, constituting any waiver by Central Illinois Public Service Company of the provision of said contract making it subject to the approval of the Illinois Commerce Commission nor which would estop said Central Illinois Public Service Company from claiming the benefit of any of the provisions of said contract."

■ In determining whether these findings are predicated upon substantial support in the record, it is material, we think, as the court below no doubt thought, to take into consideration all the facts and circumstances surrounding the parties at

---

[1] Halsell v. Renfrow, 202 U.S. 287, 291, 26 S.Ct. 610, 50 L.Ed. 1032, 6 Ann. Cas. 189; Furrer v. Ferris, 145 U.S. 132, 134, 12 S.Ct. 821, 36 L.Ed. 649; Nygard v. Dickinson, 9 Cir., 97 F.2d 53, 58; Fuller v. Reed, 1 Cir., 249 F. 158.

the time of the execution of the contract, and especially the facts and circumstances relevant to the alleged waiver by the defendant, as well as any estoppel which might militate against defendant's right to deny such waiver.

Prior to the time of the execution of the contract, the defendant owned and operated a four-inch pipe line running from Mattoon, Illinois, in a northeasterly direction to Paris, Illinois, a distance of 42 miles. It also had a pipe line running south from Mattoon, 28 miles to Effingham. There was also a line running from Paris, Illinois to Terre Haute, Indiana, a distance of 17 miles, 8 miles of which were on the Illinois side, owned by the defendant, and 9 miles on the Indiana side owned by the plaintiff. Prior to the time of the contract in question, plaintiff supplied the defendant with artificial gas from its Indiana plant. In 1930, the main of the Panhandle Pipe Line Company was constructed across Illinois, and began operations about 1931. That company was a public utility selling natural gas at wholesale to other utilities and their main transmission line extended about 20 miles north of Mattoon, and about 13 miles North of Paris, substantially paralleling the defendant's line between the two cities. This company was offering natural gas as a substitute for manufactured gas. In the meantime, plaintiff had installed mains for conveying natural gas from Kentucky to Terre Haute and was prepared to furnish such gas to its customers. The officials of the plaintiff and defendant companies discussed the advisability of changing the artificial gas supplied by the plaintiff to the defendant to natural gas, the latter stressing the importance of making such change due to the fact of the claimed superiority of natural gas over the artificial.

■ Defendant is a public utility and in the operation of its gas public utility business, is subject to the jurisdiction and control of the Illinois Commerce Commission. While the parties to this litigation seem to be of the opinion that the contract in controversy did not require the approval of the Commerce Commission, yet it is certain that the defendant could not change from artificial to natural gas without such consent, and the price which it could charge for gas furnished its customers or any change thereof, was subject to its control. In fixing such rate, the Commission determines what expenditures are reasonable and allowable. With this situation as a background, it is readily seen that it was important to the defendant that no expenditures be made, or obligations incurred without the approval of the Commerce Commission. This was discussed and undoubtedly understood by the parties and was in the mind of each of them when the contract in suit was executed "subject to the approval of the Illinois Commerce Commission."

Immediately after the execution of the contract, defendant filed with the Commission a petition for approval of the contract, as well as a petition for authority to substitute natural for artificial gas, and for approval of new rate schedules. After a hearing, the Commission, on July 21, 1932, entered an interlocutory order authorizing the substitution of natural gas and providing for a temporary schedule of rates for the new service, but continued the matter of approval of the contract for later determination. The order of the Commission is lengthy, but it seems important to refer to some of its language. It points out definitely that the request for approval of the contract would not be considered at that time, but expressly reserves jurisdiction. The order discussing defendant's application for authority to use natural gas recites: "This program is more or less experimental. Experience may demonstrate that such a plan does not promote the public's interest but that the manufacture and distribution of artificial gas should be resumed. Hearings on the subject matter which may relate to the question of permanent rates and the necessity of the proposed program to the public convenience are still in progress. Investigations are still being made and will continue. In the continued study of the situation the above phases of the subject will be given further consideration and the question of whether artificial or natural gas should be distributed shall be reserved for final disposition on the basis of evidence taken in this cause and in related causes."

It is further stated that nothing in the order "shall be construed as binding the Commission in any way with respect to the rates, charges, or subject matter contained therein." A copy of this interlocutory order of the Commerce Commission was sent to the plaintiff July 26, 1932, and was received by the Vice President and manager of the company. We are advised there

were more than thirty continuances of the hearing on the petition for approval of the contract, all made at the instance of the Commission. The defendant presented most of its evidence at a hearing in 1933, at which plaintiff was represented, and it appears, was rather vigilant in urging the Commission to render a decision.

Just when the parties commenced to make preparation for the change from artificial to natural gas is not certain from the record, but it is certain that the change was not made until some time after the order of the Commerce Commission of July 21, and after plaintiff had been furnished with a copy of that order. Irrespective of the parol testimony, to which we shall hereafter make reference, it seems to us that the furnishing of natural gas by the plaintiff and its acceptance by the defendant, under the existing circumstances, was insufficient to establish a waiver by the defendant of a provision of the contract, even though admittedly for its benefit. As is said in 27 R.C.L. 909: "No man can be bound by a waiver of his rights, unless such waiver is distinctly made, with full knowledge of the rights which he intends to waive; and the fact that he knows his rights, and intends to waive them, must plainly appear. A waiver may be express or implied, but in the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to."

This court, in Dunkel Oil Corp. v. Independent Oil & Gas Co., 7 Cir., 70 F.2d 967, in discussing the doctrine of waiver, on page 969 said: "An implied waiver, of a forfeiture for instance, is where one party has pursued such a course of conduct, with reference to the other party who has incurred the forfeiture, as to evidence an intention to waive the same, or where the conduct pursued is inconsistent with any other honest intention, than an intention to waive the forfeiture, and the one who has incurred the forfeiture has been induced by such conduct to act upon the belief that there has been a waiver, and has incurred trouble and expense thereby. * * * It is essentially a matter of intention, though circumstances may sometimes be such that the real intention is immaterial, and the question is, whether a party is not estopped by conduct evidencing an intention upon which another has acted, to say what his true intention really was. In such cases, the ordinary and well-understood doctrine of estoppel by conduct is applicable."

As stated, the essential act relied upon as constituting a waiver was the acceptance of gas by the defendant prior to the approval of the contract by the Commission. At this time, however, it is certain that both plaintiff and defendant had knowledge that the Commission had only authorized the use of natural gas by the defendant as a temporary expediency and that the same could be charged for at a rate which was likewise temporary. The plaintiff, as well as the defendant, must have known that the latter would have no use for natural gas except as it was permitted to distribute it to its customers by authority of the Commission and that both had actual knowledge that the authority granted was of temporary character and more than that, that its use was regarded by the Commission as of an experimental nature. With that knowledge, we do not see how it can be contended that any reasonable person would have been led to believe, or considered for a minute, that the commencement of the delivery of natural gas under such circumstances could be otherwise than of a temporary nature. To us it is an irresistible conclusion that plaintiff commenced the delivery of natural gas to the defendant in accordance with the temporary order of the Commission rather than by virtue of the terms of a contract which was to extend over a period of 15 years. To conclude otherwise is to impute to the parties an intention to obligate themselves, one to deliver and the other to receive over a long period of years, a product, the use of which by the latter, could be terminated at any time by the Commerce Commission. It therefore seems apparent that the defendant, in accepting the natural gas, had no intention of waiving the provision "subject to the approval of the Illinois Commerce Commission" and likewise apparent that no such belief was or could have been entertained by the plaintiff. Each party, no doubt, hoped for the eventual approval of the contract, but neither could have believed that such approval was waived by the receipt of the natural gas by the de-

fendant under a temporary and experimental arrangement.

Several of plaintiff's officers testified at the hearing. It is likewise plain from their testimony that both parties assumed that the approval of the Commission would some time be procured and that in the meantime, plaintiff, as well as the defendant, was willing to take the chance that such approval would be obtained. No statement or conversation was at any time had by or with the defendant which might indicate to any extent that it intended to waive the provision "subject to the approval of the Illinois Commerce Commission." Plaintiff argues that certain oral testimony was improperly admitted as constituting a conclusion upon the legal question involved. We do not believe the testimony is subject to this criticism, but even if so, we conclude there is ample evidence to sustain the finding of the court to the effect that the act of the defendant, in accepting natural gas prior to the approval of the contract by the Commerce Commission, did not constitute a waiver of such provision.

 Plaintiff cites a number of instances wherein it is claimed the defendant gave recognition to the contract during the period it was receiving natural gas from the plaintiff. It seems evident that during this time that transactions between the parties were carried on largely in conformity with the terms of the proposed contract. Letters were exchanged in which reference was made to the terms of the agreement. Defendant paid the plaintiff for gas delivered at the rate fixed in the agreement. This recognition, if such it be, can only be material as effecting an estoppel which is sought to be invoked against defendant's denial of waiver. As a general rule, this doctrine is applicable only where the party sought to be estopped is guilty of such conduct as amounts to fraud or misrepresentation upon which the other party has relied to his detriment. As was said in Vail v. Northwestern Mutual Life Insurance Company, 192 Ill. 567, at page 570, 61 N.E. 651 at page 652: "A party claiming the benefit of an estoppel cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others."

We find nothing in this case to indicate any misrepresentation or fraud on the part of the defendant. On the contrary, as heretofore pointed out, the parties had equal opportunity of acquiring information concerning the situation—in fact, actually had such information. The plaintiff could not have been deceived or misled by any act of the defendant or by its conduct, and hence, is in no position to invoke estoppel as to defendant's denial of waiver. Neither are we impressed with plaintiff's contention that the evidence adduced before the Commerce Commission on behalf of the defendant was such as to operate a waiver of the condition requiring Commission approval. In support of such position plaintiff argues that one of defendant's witnesses testified before the Commission as to the inadequacy of the supply of gas furnished by plaintiff, while the same witness admitted at the hearing in this cause that there was no such inadequacy. The record of the Commerce Commission is not before us, and we have no way of determining what reason prompted the Commission in its refusal to approve the contract. In addition, we do not think the testimony of the witness is subject to the interpretation sought to be placed upon it by the plaintiff.

 The further question for consideration is the matter of deductions made by defendant from payments due for natural gas on account of the expense in operating a compressor. The court found that "the plaintiff agreed with Central Illinois Public Service Company that plaintiff would increase the pressure in a part of the line of Central Illinois Public Service Company." We are unable to find any agreement, however, on the part of the plaintiff "to increase the pressure." It is only shown that the plaintiff agreed to install a compressor. Both parties admit there was no agreement as to who should bear the expense of its operation. It appears that the defendant desired greater pressure at Paris in order that it might deliver a greater quantity of gas through its own main to Mattoon. In January, 1936, plaintiff, at its own expense, installed a compressor upon the defendant's property at Mattoon which would pick up the load after the Paris gas had been taken off and boost the gas on to Mattoon and points beyond. Defendant operated the compressor when needed and deducted the cost of its operation from payments for gas. It is disclosed that several conferences were held with reference to the need for the additional pressure, and it was defend-

ant who was insisting that such service be provided. True, it was of mutual benefit to the extent that the more gas sold by the defendant, the more it would require of the plaintiff. It was primarily, however, for the benefit of the defendant, and the compressor was installed at its request. Under such circumstances, we think there is no basis for implying a promise by plaintiff to pay for this operation or to reimburse the defendant.

We conclude the District Court was in error in holding the expenses of operating the compressor to be an obligation of the plaintiff, and in this respect the decree is reversed. Otherwise, the decree is affirmed at appellant's costs.