Richard L. APITSCH

v.

**PATAPSCO & BACK RIVERS RAILROAD COMPANY.**

Civ. A. No. 74-135-N.

United States District Court, D. Maryland.

Nov. 27, 1974.

Filed November 27th, 1974. Edited transcription of oral opinion rendered in open court on October 24, 1974.

Milton R. Jones and Norris W. Tingle, Baltimore, Md., for plaintiff.

Thomas E. Cinnamond and Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

NORTHROP, Chief Judge.

The plaintiff, Richard L. Apitsch, has brought this action against his employer, Patapsco & Back Rivers Railroad Company, under the provisions of the Federal Employers' Liability Act [hereinafter, "FELA"], 45 U.S.C. §§ 51–60, to recover damages for certain injuries sustained in the course of his employment on the defendant's premises at Sparrows Point, Maryland.

There is no dispute as to the facts of the case. About 11:20 p. m. on March 16, 1973, the plaintiff was in the process of dumping some trash when a fellow employee lost control of a 55-gallon drum of trash which fell and struck the plaintiff on the right elbow. It is not necessary to describe the subsequent developments relating to that injury. Suffice it to say that ultimately the plaintiff underwent corrective surgery, and that although one physician has stated that there is some permanent partial disability, the plaintiff has been able to return to work and to resume all of his former duties. He does, however, continue to have some pain and occasional swelling in the elbow as a result of the injury.

On the basis of the uncontradicted evidence, this Court finds that the plaintiff did sustain this injury, that the injury was incurred as a result of the negligence of his employer, Patapsco & Back Rivers Railroad Company, and that there was no contributory negligence on the part of the plaintiff.

The defendant, however, contends that the plaintiff is barred from any recovery in this action because of a purported settlement and a release by the plaintiff

of all of his rights under the FELA. Specifically, the defendant contends that on July 17, 1973, the plaintiff made a voluntary election to accept whatever amounts might be payable to him under the provisions of the Maryland Workmen's Compensation Act, Md.Ann. Code art. 101, § 1 et seq., as a full compromise and settlement of any claims which he might have had under the FELA. In connection with this purported election the plaintiff signed two pieces of paper. The first of these papers was entitled "This statement is to be read to each employee who makes a claim under Workmen's Compensation," while the second was entitled "FELA Release in Connection with Filing for Workmen's Compensation."

The entire dispute in reference to this action centers around these papers and the validity of the release. It is, therefore, necessary to spell out the circumstances surrounding their execution in some detail.

Although his injuries were sustained on March 16, 1973, the plaintiff did not begin to lose any time from work as a result thereof until July 12, 1973. Shortly thereafter, on July 17, 1973, he was summoned to the company office at Sparrows Point to give a statement relating to the occurrence of the injury. At that time he met with Mr. Alfred B. Woodhead, Jr., the company's assistant supervisor of personnel. Mr. Woodhead's primary duties were with respect to the company's social insurance plan (SIP), accident investigation, and statement taking. He had been fulfilling these duties with the company for some 14 years.

After taking a recorded statement from the plaintiff as to the factual background of the injury, Mr. Woodhead proceeded to discuss the question of benefits and compensation. Specifically, he informed the plaintiff that pursuant to an agreement with his union, Steelworker's Local No. 5054, AFL-CIO, the company's practice for many years had been to treat such claims under the provisions of the Maryland Workmen's Compensation Act, and that the company had accepted such Workmen's Compensation claims even though it could defeat them on jurisdictional grounds. Mr. Woodhead then went on to inform the plaintiff that he did have an alternative course of action—a right to sue the Railroad under the FELA. Under this alternative, it was explained, he might be able to recover his full back wages. Such recovery, he said, would only be possible after a trial on the matter, and the plaintiff would have to hire an attorney and establish that the Railroad was at fault in causing his injuries. In this regard it should be noted the plaintiff testified that Mr. Woodhead told him that plaintiffs in such cases were unsuccessful 99 times out of a 100.

As a part of this explanation of rights, Mr. Woodhead read to the plaintiff Defendant's Exhibit No. 1, entitled "This statement is to be read to each employee who makes a claim under Workmen's Compensation." That statement, which this Court feels is particularly pertinent to its decision in this case, provided as follows:

You claim that you have been injured while at work on the Railroad and want to file a claim. In keeping with an understanding with your Union, the practice for many years has been to file under Workmen's Compensation, and the Railroad has accepted Workmen's Compensation claims even though it could defeat any Workmen's Compensation claims. Before you make a claim under Workmen's Compensation, I want to point out to you that you have the right to sue the Railroad under the Federal Employers' Liability Act and recover for your injuries if you can prove that the Railroad was at fault. If you still want to file for Workmen's Compensation, and take the Compensation benefits in settlement of any claims that you may have under the Federal Employers' Liability Act, read and sign the accompanying form of FELA release.

Exactly what else, if anything, Mr. Woodhead told the plaintiff in this regard is a matter of some disagreement. The plaintiff contends that he was led to believe that if he wished to receive any immediate interim benefits while he was off work, he had to proceed under the Workmen's Compensation procedures. Thus, he testified that Mr. Woodhead told him that although he could sue the Railroad for back wages under the FELA, he would only be able to recover under that Act after his suit had been finally adjudicated. Plaintiff further testified that Mr. Woodhead *specifically did not tell him* that if he elected to proceed under that Act, he would be able to receive interim benefits from the Railroad Retirement Board while he was off work and while his suit was pending.

Since the plaintiff had a wife and four children and was facing an indeterminate period of lay-off, the amount and timeliness of immediate compensation was of considerable importance to him. As defendant took great pains to point out at trial, plaintiff had had two prior claims before the Maryland Workmen's Compensation Commission while with a previous employer, not a railroad. He knew, therefore, that if he filed for Workmen's Compensation, he would be able to get his benefits promptly. He did not know, however, that basically comparable benefits were available to him under the FELA.

It is significant in this regard to compare the interim benefits which were available under the two alternate procedures being offered. Under Workmen's Compensation, the plaintiff was entitled to receive weekly benefits while off work at the rate of $96.80, in addition to the $12 weekly which he received under the company's social insurance plan. This latter program was a special insurance program offered to the defendant's employees for which they paid the premium, and its benefits were available to the plaintiff under either option. In contrast, had the plaintiff elected to proceed under the FELA, he would have been entitled to receive weekly benefits while off work at the rate of $93.00 from the Railroad Retirement Board, while preserving his right to sue his employer under that Act and to recover his full back wages and for pain and suffering, if he could establish that the Railroad was at fault in causing his injuries.

In contrast to Mr. Apitsch's testimony, Mr. Woodhead testified that he did explain to the plaintiff that he would be able to recover certain interim benefits if he elected to proceed under the FELA. He admitted, however, that he did not at any point go into the dollar amounts of such benefits, nor did he compare them with those which would be available under the Workmen's Compensation Act. Furthermore, he admitted that he did not explain to the plaintiff that if he elected to sue under the FELA, that in addition to recovering his back wages, he might also be able to recover any other incidental expenses, and for pain and suffering.

Under these circumstances, the plaintiff, who was not represented by counsel at that time, indicated his desire to proceed under the Workmen's Compensation procedures and "to get his benefits now." He therefore read and signed the above statement of rights which had been read to him, acknowledging that fact and that he understood its contents. He also read and signed the accompanying "FELA Release," which provided as follows:

> I have this date made a claim under the Workmen's Compensation Law of Maryland for injuries sustained by me while at work for Patapsco & Back Rivers Railroad Company on 3-16-73. In doing so, I have voluntarily elected to take as damages under the Federal Employers' Liability Act the benefits that will be payable to me under the Workmen's Compensation Law, and the amount of such benefits under the Workmen's Compensation Law will be full settlement of any and all claims I may have under the Federal Employers' Liability Act for damages arising out of said accident.

The plaintiff then executed a claim for Workmen's Compensation benefits, which was subsequently filed with the Maryland Workmen's Compensation Commission. Without any hearing on the matter, and acting solely on the basis of the reports which had been submitted to it by the Railroad, the Commission on August 2, 1973, made an award of temporary total benefits while off work at the rate of $96.80 per week. Pursuant thereto, the plaintiff was paid benefits totalling $1,604.12 up to the date of his return to work on November 5, 1973. In addition, all of his medical and hospital expenses have been paid. However, no action has yet been taken by the Commission with respect to an award for any possible permanent partial disability incurred by the plaintiff, and the Commission's files are still open in that regard.

■ As noted previously, it is the defendant's contention that the plaintiff's election to receive whatever benefits might be payable to him under the provisions of the Maryland Workmen's Compensation Act and his signing of the release of his rights under the FELA stand as an absolute bar to his maintenance of this action.[1] The plaintiff responds to these arguments by contending that the purported release is void on any of several different theories: 1) that since the FELA is the exclusive remedy against a railroad for injuries to its employees, neither the employee nor the railroad had a legal right to elect to take the plaintiff out of the coverage of the Act and to come instead under the provisions of a state workmen's compensation procedure; 2) that the underlying agreement between the union and the carrier was invalid *per se* under § 5 of the Federal Employers' Liability

Act, 45 U.S.C. § 55, and that the release entered into pursuant to that agreement was, therefore, also invalid; 3) that the release was signed by the plaintiff under duress and as a result of certain material misstatements and omissions by the defendant's agent, Mr. Woodhead, with respect to the plaintiff's rights under the FELA; and 4) that the release was entered into under a mutual mistake of fact as to the extent of the plaintiff's injuries.

At trial, counsel for plaintiff abandoned the last of these grounds and conceded that there was no basis for this Court to find any mutual mistake of fact in this case. And, indeed, the plaintiff himself candidly admitted that prior to the date on which he signed the release, he had been informed by Dr. Richard J. Phillips, the treating physician at the Bethlehem Steel Dispensary, that he might have to undergo surgery. He further stated that Dr. Phillips had told him that such operations were successful only about 80% of the time, and that even if he underwent surgery, he might still have some continuing pain and discomfort in his elbow.

## I.

## FELA AS EXCLUSIVE REMEDY

■ With respect to the plaintiff's first contention, it is well-established that the Federal Employers' Liability Act provides the exclusive remedy for the recovery of damages by an employee of a railroad engaged in interstate commerce, where the employee's injury was a result of negligence on the part of the railroad. South Buffalo Ry. v. Ahern, 344 U.S. 367, 371–372, 73 S.Ct. 340, 342, 97 L.Ed. 395 (1953); New York Central R.R. v. Winfield, 244

---

1. In the Pre-Trial Order in this case the defendant appeared to assert that plaintiff should not be allowed to proceed with this action because he had not tendered back the consideration received under the release. However, it is well-established that where a plaintiff is attacking the validity of a release of his rights under the FELA, a tender back of any consideration received is not a prerequisite to his bringing the action. Hogue v. Southern R.R., 390 U.S. 516, 517–518, 88 S.Ct. 1150, 1151–1152, 20 L.Ed.2d 73 (1968) (*per curiam*); Mohr v. Pennsylvania R.R., 409 F.2d 73, 74–75 (3rd Cir. 1969); Marshall v. New York Central R. R., 218 F.2d 900, 906 (7th Cir. 1955); Irish v. Central Vermont Ry., 164 F.2d 837, 840 (2nd Cir. 1947).

U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045 (1917); Anderson v. Burlington Northern, Inc., 469 F.2d 288, 289 (10th Cir. 1972); Wiederhold v. Elgin, Joliet & Eastern Ry., 368 F.Supp. 1054, 1056 (N.D.Ind.1974); Pennsylvania R.R. v. Reeley, 179 Md. 35, 52, 16 A.2d 904 (1940), cert. denied, 312 U.S. 706, 61 S.Ct. 828, 85 L.Ed. 1139 (1941). Thus, in the landmark case of Erie R.R. v. Winfield, 244 U.S. 170, 173–174, 37 S.Ct. 556, 557–558, 61 L.Ed. 1057 (1917), the Supreme Court stated that "[i]t is beyond the power of any state to interfere with the operation of that act, either by putting the carrier and their employees to an election between its provisions and those of a state statute, or by imputing such an election to them by means of a statutory presumption."

The defendant, however, argues that the situation in this case is distinguishable from those cases in that here the plaintiff-employee and the Railroad voluntarily agreed to have the state Workmen's Compensation Commission, in effect, act as an arbiter to determine the amount of damages which the plaintiff would receive in settlement of his claim under the FELA. In support of its position the defendant cites Heagney v. Brooklyn Eastern District Terminal, 190 F.2d 976 (2nd Cir. 1951), cert. denied, 342 U.S. 920, 72 S.Ct. 367, 96 L.Ed. 688 (1952).

In *Heagney*, the Court examined the validity of § 113 of the New York Workmen's Compensation Law, McKinney's Consol.Laws, c. 67, which authorized the state Workmen's Compensation Board to proceed in cases of injuries subject to federal laws where both the employee and the carrier waived their interstate commerce rights.[2] Noting that "a full compromise enabling the parties to settle their dispute without litigation . . . did not contravene the [Federal Employers' Liability] Act," Boyd v. Grand Trunk Western R.R., 338 U.S. 263, 266, 70 S.Ct. 26, 28, 94 L.Ed. 55 (1949); Callen v. Pennsylvania R.R., 332 U.S. 625, 631, 68 S.Ct. 296, 298–299, 92 L.Ed. 242 (1948), the Court stated as follows:

> What we must look for, therefore, is a fair compromise whereby the parties settle their dispute in substitution for the litigation permitted by the Federal Acts; there is no mystic significance to be accorded a "satisfaction" upon some assumed "final award." When a state procedure accomplishes just that by agreement of all concerned it should therefore be at least as valid as a formal release secured on payment of a few hundred dollars. [190 F.2d at 979.]

In South Buffalo Ry. v. Ahern, *supra*, the Supreme Court considered the validity of § 113 of the New York Workmen's Compensation Law in conjunction with the Federal Employers' Liability Act. In that case the Court construed the prior decision of the New York Court of Appeals, Ahern v. South Buffalo Ry., 303 N.Y. 545, 104 N.E.2d 898 (1952), as holding that § 113 was merely permissive and not coercive, and held that as so construed the section did not transgress the uniform statutory scheme established by the federal act. Thus, the Court stated:

> We do not doubt that the Federal Employers' Liability Act, supplanting

---

2. Section 113 of the New York Workmen's Compensation Law provided that:

The provisions of this chapter shall apply to employers and employees engaged in intrastate, and also interstate or foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the Congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, provided that awards according to the provisions of this chapter may be made by the board in respect of injuries subject to the admiralty or other federal laws in case the claimant, the employer and the insurance carrier waive their admiralty or other interstate commerce rights and remedies, and the state insurance fund or other insurance carrier may assume liability for the payment of such awards under this chapter.

a patchwork of state legislation with a nationwide uniform system of liberal remedial rules, displaces any state law trenching on the province of the Act. . . . The New York Court of Appeals, however, manifested meticulous care to avoid collision; it construed § 113 of the Workmen's Compensation Law as a mere legislative authorization, *permitting* the Board to effectuate private agreements for compromising a federal controversy by resort to an impartial local umpire— "that is all that section 113 of the Workmen's Compensation Law purports to accomplish." [303 N.Y. at 555, 104 N.E.2d at 904.] The difference between coercion and permission is decisive; New York's jurisdictional grant, so confined, does not transgress. [344 U.S. at 371–372, 73 S.Ct. at 342–343.]

■■■ In light of these cases, it would appear that where a state statute permits the state Workmen's Compensation Commission to effectuate private agreements for compromising a federal controversy, the parties could, in an appropriate case,[3] voluntarily agree to submit the matter to the Commission for its arbitration. *Cf.* Bay State Dredging & Contracting Co. v. Porter, 153 F.2d 827, 832–833 (1st Cir. 1946). In light of the benevolent aims of the FELA, however, such agreements are subject to the close scrutiny of the courts. South Buffalo Ry. v. Ahern, *supra*, 344 U.S. at 372–373, 73 S.Ct. at 343. And where such agreements are tainted by fraud or overreaching, they will, of course, be invalidated. *Id.*, 344 U.S. at 372, 73 S.Ct. at 343; Callen v. Pennsylvania R.R., *supra*, 332 U.S. at 630, 68 S.Ct. at 298.[4]

In Maryland, § 31 of the Workmen's Compensation Act, Md.Ann.Code art. 101, § 31 (Cum.Supp.1973), which is in many respects similar to § 113 of the New York Workmen's Compensation Law, provides a permissive grant of authority to the state Workmen's Compensation Commission.[5] However, section 31 requires that the election to come

---

3. In this regard, this Court feels that it is appropriate to note the factual differences between the situations confronting the Courts in Heagney v. Brooklyn Eastern District Terminal, *supra*, and South Buffalo Ry. v. Ahern, *supra*, and the situation present in the instant case. In both of the former cases, the respective Courts emphasized heavily the fact that the employees had been represented by counsel throughout numerous hearings before the Workmen's Compensation Board. Furthermore, in both cases, the Courts stressed the lengthy interim periods during which the parties had proceeded in conformity with their respective agreements. The Courts thus felt that under those circumstances it was only equitable that the employee in Heagney, *supra*, and the railroad in Ahern, *supra*, be estopped from rescinding their respective agreements at such a late date. In this case, however, the plaintiff was neither represented by counsel at the time he entered into the agreement, nor subsequently before the Commission. Indeed, he was not represented by counsel until January, 1974, and this suit was filed promptly thereafter on February 5, 1974. Furthermore, there were no actual hearings before the Commission in this case, nor was there an extended period during which the plaintiff received benefits under the Commission's award. Under these circumstances, there would be no basis for a comparable finding of waiver or estoppel in this case.

4. *See* discussion *infra* at 505–507.

5. Section 31 of the Maryland Workmen's Compensation Act provides in pertinent part as follows:

The provisions of this article shall apply to employers and employees engaged in intrastate and also in interstate or foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the Congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, except that *any such employer and any of his workmen only in this State may, with the approval of the Commission, and so far as not forbidden by any act of Congress, voluntarily accept the provisions of this article by filing written acceptance with the Commission*, which shall subject the acceptors to the provisions of this article to all intents and purposes as if they had been originally included in its terms.

Md.Ann.Code art. 101, § 31 (Cum.Supp. 1973) (emphasis added).

under the Workmen's Compensation Act must be made in writing, and that it must be filed with the Commission. In this case, the undisputed evidence shows that no such filing was ever made. Thus, it would appear that the statutory prerequisite to the Commission's taking jurisdiction over this case was never complied with. *See* Cox v. Sandler's, Inc., 209 Md. 193, 200, 120 A.2d 674 (1955); Congressional Country Club, Inc. v. Baltimore & O. R.R., 194 Md. 533, 544, 71 A.2d 696 (1949).

## II.

### INVALIDITY OF THE RELEASE

To overcome the deficiencies in the procedures followed in this case, the defendant distinguishes Heagney v. Brooklyn Eastern District Terminal, *supra*, and South Buffalo Ry. v. Ahern, *supra*, by pointing out that in this case, in addition to entering into an agreement to proceed under the state Workmen's Compensation procedures, the plaintiff also signed a release of his rights under the FELA.

■ It is well established that the validity of releases under the Federal Employers' Liability Act raises a federal question which is to be determined by federal rather than state law. Maynard v. Durham & Southern Ry., 365 U.S. 160, 161, 81 S.Ct. 561, 562, 5 L.Ed. 2d 486 (1961); Dice v. Akron, C. & Y. R.R., 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952). Moreover, the Supreme Court has held that the burden of proof of showing that a release is tainted with invalidity, either by fraud or by mutual mistake of fact, is upon the party attacking its validity. Callen v. Pennsylvania R.R., *supra*, 332 U.S. at 629–630, 68 S.Ct. at 298. Although this Court feels that that burden has been met in the instant case, it also wishes to point out that since such a release purports to waive a federally-created private right, it may be subjected to special scrutiny on policy grounds. Barninger v. National Maritime Union, 372 F.Supp. 908, 914 (S.D.

N.Y.1974). Thus, in South Buffalo Ry. v. Ahern, *supra,* the Supreme Court said:

> And, mindful of the benevolent aims of the Act, we have jealously scrutinized private arrangements for the bartering away of federal rights. [*Garrett v. Moore-McCormack Co.,* 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942)]; Boyd v. Grand Trunk Western R. Co., 1949, 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55; Duncan v. Thompson, 1942, 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575.

344 U.S. at 372–373, 73 S.Ct. at 343. *See also* Marshall v. New York Central R.R., 218 F.2d 900, 905–906 (7th Cir. 1955).

Section 5 of the Federal Employers' Liability Act, 45 U.S.C. § 55 provides in pertinent part that:

> [a]ny contract, rule, regulation, or *device whatsoever,* the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: . . .. [Emphasis added.]

In an opinion which this Court finds particularly relevant to this case, Judge Fox stated that Section 5 "declares a public policy to void releases or other exculpatory devices procured under circumstances that indicate an attempt to avoid Federal Employers' Liability Act liability." Kozar v. Chesapeake & O. Ry., 320 F.Supp. 335, 384–385 (W.D. Mich.1970), aff'd in part and vacated in part on other grounds, 449 F.2d 1238 (6th Cir. 1971) (emphasis deleted).

In this case, plaintiff argues that the agreement underlying the release, between the defendant and the plaintiff's union to the effect that claims under the FELA would be processed under the Maryland Workmen's Compensation Act, was a "contract" or "device" within the meaning of section 5 and that it was void *per se.* The plaintiff contends that since that underlying agreement was void, the release based upon it was also void.

Counsel for the defendant conceded at trial that the agreement between the defendant and the union would have been void *per se* under section 5 if it had mandated that every employee in the union process their FELA claims under the Maryland Workmen's Compensation Act. His position is that since the agreement only provided for a voluntary election by the employees, and left to them the actual decision as to which course of action to pursue, it was not a "device" within the meaning of section 5.

In Philadelphia B. & W. R.R. v. Schubert, 224 U.S. 603, 32 S.Ct. 589, 56 L.Ed. 911 (1912), the Supreme Court construed section 5, and held that it included every variety of agreement or arrangement the purpose of which was to avoid liability under the Act. More significantly, in interpreting the phrase "the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act," the Supreme Court stated that "the purpose or intent" of such devices "is to be found in their necessary operation and effect in defeating the liability which the statute was designed to enforce." 224 U.S. at 613, 32 S.Ct. at 592. *See also* Duncan v. Thompson, 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575 (1942).

In this case, Mr. Woodhead stated that in the 14 years during which he had been handling accident claims for the defendant, he had never known anyone given the choice between proceeding under Workmen's Compensation and suing under the FELA who had elected to pursue the latter course of action. In the opinion of this Court, this fact clearly demonstrates that the practical effect of the agreement with the union was to enable the defendant Railroad to avoid the full scope of its liability under the FELA.

In this regard this Court takes notice of Judge Fox's discussion in Kozar v. Chesapeake & O. Ry., *supra*, 320 F.Supp. at 383–388, of the policies underlying the FELA and of the various factors inhibiting railroad employees from pursuing the full scope of the remedies available to them under that Act. Among other factors, Judge Fox particularly noted the reluctance on the part of employees to bring suit because of their fears that such action might lead to their dismissal or other adverse personnel action. *Id.*, 320 F.Supp. at 383 & n. 24. To this factor in the present case is added the pressure of apparent union approval of the practice of processing such claims under Workmen's Compensation. Thus, an employee might feel that if the union has approved such a procedure, it must be in his best interests. Conversely, he might be afraid that to act other than in accord with the "union-approved" practice would be to incur union disapproval.

This Court, therefore, concludes that the defendant's underlying agreement with the union to process claims under the FELA in accordance with the Maryland Workmen's Compensation Act procedures was void under section 5 of the Federal Employers' Liability Act, 45 U.S.C. § 55, as a device, the purpose or intent of which was to enable the defendant to avoid the full scope of its liability under that Act.

Because the statement of rights accompanying the release recited that agreement, and because that statement failed to fully explain the employee's rights under the FELA,[6] this Court also finds that the release and accompanying statement which were signed by the plaintiff were void under section 5.

In holding this particular release void, this Court is aware that the Supreme Court has expressly held that a release compromising a claimed liability under the Federal Employers' Liability Act is valid, and not void under section 5. South Buffalo Ry. v. Ahern, *supra*, 344 U.S. at 372, 73 S.Ct. at 343; Callen v. Pennsylvania R.R., *supra*, 332 U.S. at

---

6. *See* discussion *infra* at 505–507.

630–631, 68 S.Ct. at 298–299. However, in those cases the Court was confronted only with the situation of a single release or agreement of compromise. None of those cases presented a situation such as that present in the instant case, where *defective* releases and agreements were being systematically solicited from all of the employees covered by the Union agreement who were injured during the course of their duties with the defendand Railroad. Thus, in South Buffalo Ry. v. Ahern, *supra,* 344 U.S. at 372 n. 12, 73 S.Ct. at 343 n. 12, the Supreme Court expressly stated that:

> [w]e need not now decide whether the *systematic solicitation* of such agreements would run afoul of § 5 of the Federal Employers' Liability Act. [Emphasis added.]

### III.

### MATERIAL MISSTATEMENTS AND OMISSIONS

■ Finally, even if the release in this case were not void as a device in violation of section 5, it would still have to be invalidated because this Court finds that its execution was materially induced by the defendant's failure to explain to the plaintiff the full scope of his rights and benefits under the Federal Employers' Liability Act, and that under the circumstances of this case such failure amounted, in effect, to fraud upon the plaintiff.

Thus, in spite of the fact that the defendant's agent, Mr. Woodhead, was aware the plaintiff was primarily concerned about the question of interim benefits while he was off work, he wholly failed to explain to the plaintiff that were he to elect to sue the Railroad under the FELA, he would be entitled to receive interim benefits under that Act which were roughly comparable in amount to those available under Workmen's Compensation. Furthermore, taking a close look at the statement of rights

which Mr. Woodhead read to the plaintiff, this Court finds that the statement gives the impression that should the employee elect to sue under the FELA, he would have to wait for a court determination in his behalf before he would be entitled to receive benefits, but by electing to proceed under Workmen's Compensation, he would be able to receive immediate benefits.

When the plaintiff indicated to Mr. Woodhead that he did not understand his rights as read to him, Mr. Woodhead stated that he went over the statement two more times. He did not, however, go into any more detailed explanation or specific comparison of the plaintiff's rights under the two alternate procedures. And, in fact, he admitted that he never discussed the amounts of the benefits which would be available under either procedure. Finally, Mr. Woodhead did not at any point attempt to make any evaluation as to the merits of the plaintiff's claim.

■ Under the circumstances of this case, where the plaintiff was unassisted by counsel and had no prior familiarity with the operation of the FELA, this Court is of the opinion that the Railroad's agent, Mr. Woodhead, was under an obligation to bring home to the plaintiff a full understanding of his rights under that Act before soliciting a waiver or release of those rights. Without such an understanding, the plaintiff would clearly not be in a position to make an intelligent, voluntary decision as to which procedure he should follow.

In a somewhat similar case involving maritime injuries suffered by a seaman, and an alleged release of the seaman's right to sue under the Jones Act, 46 U.S.C. § 688, and under the general maritime law, the United States Court of Appeals for the First Circuit stated as follows:

> . . . bearing in mind that the insurance agent was negotiating with

a seaman who was without benefit of counsel, we think the agent was under an obligation to bring home to the plaintiff an understanding of · the rights he was giving up in exchange for the settlement offered. Otherwise, the plaintiff would necessarily not be in a position to make an intelligent decision as to whether the offer should be accepted. At the very least he should have been told that he had an unbeatable right of action under the maritime law for maintenance and cure, not dependent on proof of negli-gence; and that in addition he had, under the Jones Act, a right to maintain an action at law for damages for injuries resulting from the negligence of any of the officers or employees of the defendant, in which action the amount of recovery was not subject to statutory maximum limits, whereas under the compensation act the maximum recovery, apart from medical expenses, was $4,500 or perhaps $5,000. . . . Admittedly, the agent made no such disclosure to the plaintiff.

Bay State Dredging & Contracting Co. v. Porter, *supra*, 153 F.2d at 833. The Court, therefore, upheld the decision of the trial court not to submit the question of the validity of the release to the jury.

Although that case involved a seaman's release which, as such, was subject to the exacting scrutiny accorded such releases, *see* Garrett v. Moore-McCormack Co., Inc., 317 U.S. 239, 248, 63 S.Ct. 246, 252, 87 L.Ed. 239 (1942), this Court is of the opinion that the fundamental principle of disclosure embodied in that decision is equally applicable to cases involving a release of rights under the FELA. Thus, in a case somewhat closer to home, though involving a misrepresentation of law as opposed to the misrepresentation of fact which this Court has found in the instant case, that same Court held that a railroad employee might avoid a release which was executed without the advice of counsel where such execution

was materially induced by a misrepresentation by the railroad's claim agent, even though innocently made, that the employee was only entitled to compensation under the state Workmen's Compensation Act. Camerlin v. New York Central R.R., 199 F.2d 698 (1st Cir. 1952). In this regard, the Court stated as follows:

In the present case the claim agent of the railroad, negotiating a settlement with an uneducated employee unassisted by the advice of legal counsel, would from his very position be supposed to know what he was talking about as to the employee's right to compensation under the state law. Under the circumstances of this case, we hold the federal rule to be that the employee, suing under the Federal Employers' Liability Act, may avoid a release executed by him if the signing of the release was materially induced by a representation of the claim agent that the employee was entitled to compensation under the New York law at the rate of $25 a week for the period of his incapacity. [199 F.2d at 703–704.]

Considering all the circumstances of the case at bar, this Court does not believe that the plaintiff would have signed the release at issue in this case had he known and understood that he could have received weekly benefits under the FELA of only $3.80 less than he would receive under Workmen's Compensation, and still preserve his right to sue for his full wages and for pain and suffering. Inasmuch as the plaintiff was not represented by counsel, the burden was upon the defendant to fairly and fully explain his rights to him prior to soliciting a waiver or release of those rights. The statement of rights which was read to the plaintiff and which he signed, and the accompanying explanation by Mr. Woodhead, was deficient in this regard.

This Court, therefore, further finds that the release in this case was invalid

as a result of material omissions in both written and oral representation amounting to fraud on the part of the defendant. *See* South Buffalo Ry. v. Ahern, *supra*, 344 U.S. at 372, 73 S.Ct. at 343; Callen v. Pennsylvania R.R., *supra*, 332 U.S. at 630, 68 S.Ct. at 298.

## CONCLUSION

For these reasons, this Court finds that the release is void, and that it does not constitute a valid defense to the liability asserted in this action. In view of the fact that liability has already been established,[7] I now turn to the question of damages. The plaintiff has claimed a stipulated wage loss of $3,-501.87, and incidental travel expenses to and from the doctors amounting to approximately $50, in addition to whatever sum this Court might find appropriate to recompense him for past and future pain and suffering resulting from his injury.

■ Under the circumstances of this case, and considering the fact that the plaintiff has been able to return to work and resume all of his former duties, I feel that an award of $10,000 is appropriate. This award, of course, will be subject to a reduction in the amount of $1,604.12, the amount which the defendant has paid the plaintiff under his Workmen's Compensation claim, in accordance with the stipulation of the parties.[8]

It is, this 27th day of November, 1974, ordered in accordance with the aforegoing opinion, that the Clerk of this Court shall forthwith enter a judgment in favor of the plaintiff, Richard L. Apitsch, against defendant, Patapsco & Back Rivers Railroad Company, in the amount of Ten Thousand Dollars ($10,-000), subject to a reduction in the amount of $1,604.12, representing the amount which defendant has paid plaintiff under his Workmen's Compensation claim.

---

7.  *See* discussion *supra* at 497.

8.  *See. also* 45 U.S.C. § 55.