**Harold CAMERON, Appellant,**

v.

**NORFOLK AND WESTERN
RAILWAY, Respondent.**

No. 64925.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 6, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 10, 1995.

Application to Transfer Denied
Feb. 21, 1995.

Roger C. Denton, Stephen L. Groves, Schlicter, Bogard & Denton, Melissa Griggs Zoccolillo, Coburn & Croft, St. Louis, for appellant.

Deirdre C. Gallagher, Andrew B. Mayfield, Armstrong, Teasdale, Schlafly & Davis, St. Louis, for respondent.

SIMON, Presiding Judge.

Harold Cameron, employee, appeals from a judgment granting Norfolk and Western Railway's, employer, motion for summary judgment in his Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 et seq., claim against employer.

In his point on appeal, employee claims the trial court erred in granting summary judgment as genuine issues of material fact existed in that employee's affidavit stated that he was informed that taking a buy-out did not release his claim for hearing loss under the FELA, and employee stated that at no point in time did he intend to release his claim for hearing loss by signing the buy-out agreement. We reverse and remand.

When considering an appeal from a summary judgment, we review the record in the light most favorable to the party against whom summary judgment was granted. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376[1] (Mo. banc 1993). The record indicates employee worked for employer as a locomotive engineer from July 19, 1969 through December 11, 1991. In 1990, employee filed a petition asserting that under the FELA and the Boiler Inspection Act, 45 U.S.C. §§ 22 et seq., employer was liable to employee for injuries to his ears, nerve endings in the head, lymphatic membrane, inner ears, and eardrums and tissues of the inner ears sustained during his performance of his duties and resulting in hearing loss. Employee also alleged that due to his hearing loss, he incurred medical expenses, would continue to incur medical expenses, and that he lost wages. Employer subsequently filed an answer denying employee's allegations, but did not raise the defense of release.

In 1991, employer offered a buy-out program for employees over the age of 55 who had sufficient seniority. The buy-out program was posted on a company bulletin board and was available to all qualified employees. On December 11, 1991, Trainmaster Don E. Hall advised employee that he had sufficient seniority to qualify for the buy-out program, and that he had to decide that day whether to take the buy-out, which would be effective immediately. Employee chose to take the buy-out, and that day signed the following "*RESIGNATION AND RELEASE*" (Release):

> I, H.R. CAMERON ... in consideration of the sum of FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00), the receipt of which is hereby acknowledged, hereby resign and surrender any right to employment by Norfolk Southern Corporation, Norfolk and Western Railway Company, Southern Railway Company and any employer affiliated with or controlled by any of the aforenamed companies, for convenience referred to hereinafter individually and collectively as the "Company", and hereby release and forever discharge the Company and its agents, officers and employees from any claim (with the exception of vested pension rights), demand, action or cause of action, of any kind whatsoever, known or unknown, which I have or could have on account of, or in any manner arising out of or connected with, my employment by the said Company, or the termination thereof, including but not limited to any claim or right asserted under or arising out of any agreement, regulation, condition or statute affording me employment protection, protecting me from employment discrimination, or covering the conditions of my employment. I understand that in addition to the above amount I will receive payment for wages earned but not yet paid and for any vacation earned but not yet taken.

> \*   \*   \*   \*   \*   \*

> THIS RESIGNATION AND RELEASE AND THE DEDUCTIONS AUTHORIZED HEREIN ARE FULLY UNDERSTOOD BY ME. THIS DOCUMENT IS EXECUTED VOLUNTARILY AND SOLELY FOR THE CONSIDERATION ABOVE EXPRESSED, WITHOUT ANY OTHER REPRESENTATION, PROMISE, OR AGREEMENT OF ANY KIND WHATSOEVER HAVING BEEN MADE OR OFFERED TO ME BY THE COMPANY OR ANY AGENT, OFFICER, EMPLOYEE, OR REPRESENTATIVE OF THE SAID COMPANY.

> Given under my hand and seal this 11 day of Dec 1991, 1991.

> /s/Harold Cameron<br>(SEAL)

On May 25, 1993, employer filed a motion for summary judgment stating in pertinent part:

> 1. On December 11, 1991, [employee] signed a Release Agreement which released [employer] of all claims....

> 2. [Employee] acknowledges that he signed the agreement....

> 3. At the time of signing the Release Agreement, [employee] already knew of his alleged hearing loss.....

In fact, [employee] testified that he took an early buy out because of his hearing loss....

4. [Employer] is released from all claims pursuant to the Release Agreement as the agreement states, "in consideration of the sum $50,000" that [employer] is released "from any claims (with the exception of vested pension rights), demand, action or cause of action of any kind, whatsoever, known or unknown, which I have or could have on account of, or in any manner arising out of or connected with, my employment by said Company ..." ...

5. At the time [employee] executed this agreement, his hearing loss claim had been filed for over one year.

6. The validity of the Release Agreement is governed by federal law....

7. Pursuant to federal law, this Release Agreement is valid and operates to release [employer] from the action filed by [employee]....

In support of its summary judgment motion, employer attached the Release and a portion of the transcript of employee's deposition testimony during direct examination by employer, stating in pertinent part:

Q. Did you retire?

\* \* \* \* \* \*

A. Yes. I resigned from the railroad.

Q. Oh, okay. When was that, sir?

A. December 11th. I took a buy-out.

Q. December 11th, 1991?.

A. Yes.

Q. Took a buy-out. I didn't know that.
[EMPLOYEE'S ATTORNEY]: I didn't either.
BY [EMPLOYER'S ATTORNEY]:

Q. Did you do that because it made the most sense financially to do that, sir?

A. No, it did not.

Q. Why did you take a buy-out?

A. I didn't have the required years for retirement. I had about 22, and you need 30, so I did not really want to take it, no.

Q. Did they tell you that you had to take it?

A. No. No, they did not....

\* \* \* \* \* \*

Q. Who did you deal with when you took the buy-out?

A. Trainmaster Hall.

\* \* \* \* \* \*

Q. Did you deal with anybody else at the railroad concerning the buy-out?

A. No.

Employee filed suggestions in opposition to employer's motion for summary judgment, asserting that the Release executed by him was invalid because there is no mention of any claim for hearing loss, tinnitus "or other hearing-related defects," the FELA, and his injury claim against employer. Employee attached two releases, the release he signed and what he alleged to be a standard release of a hearing loss claim, and his affidavit, which states in pertinent part:

3. That on December 11, 1991, Trainmaster D.E. Hall advised me that I had sufficient seniority to qualify for the program and that I had to make a decision concerning the buy-out on that date and the buy-out would be effective immediately.

4. I chose to take the buy-out and was required to sign a document entitled "Resignation and Release", ... attached to [employer's] Motion for Summary Judgment. At no time during my discussions with Trainmaster Hall did the subject of my pending hearing loss claim come up. In fact, it was represented to me that the Resignation and Release would have no effect on my claim.

\* \* \* \* \* \*

6. That when I signed [the Release], I did not intend to waive my pending hearing loss claim with [employer].

On October 13, 1993, after a hearing on the same day, the trial court sustained employer's summary judgment motion.

■ It is well established that FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal. *St. Louis S.W. Ry. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 1348[1], 84 L.Ed.2d 303, 306[2] (1985).

▮ Our review is essentially *de novo.* *ITT*, 854 S.W.2d at 376[4]. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* at 376[5]. The propriety of summary judgment is purely an issue of law. *Id.* at 376[6]. As the trial court's judgment is founded on the record submitted and the law, we do not defer to the trial court's order granting summary judgment. *Id.*

In his point on appeal, employee claims the trial court erred in granting summary judgment as genuine issues of material fact existed in that employee's affidavit stated that he was informed that taking a buy-out did not release his claim for hearing loss under the FELA.

Employee's affidavit does not indicate who informed him that the Release would have no effect on his pending hearing loss claim. The record indicates that at no time during his discussions with Trainmaster Hall did the subject of his pending hearing loss claim come up, and that he did not speak to anyone else about the buy-out. Therefore, the allegation in employee's affidavit that it was represented to him that the Release would have no effect on his claim is not supported by the record here.

However, employee further argues that the trial court erred because he stated in his affidavit that when signing the release, he did not intend to release his claim for hearing loss. Employee relies on *Faulkenberry v. Kansas City Southern Ry. Co.*, 602 P.2d 203, 206[9] (Okla.1979), wherein the court held that federal law is clear that a release secured from one's injured employee to whom the full scope of rights under the FELA had not been explained is tainted and hence assailable.

In support of its position that the buy-out release was a release of the underlying claim, respondents rely on *Williams v. Norfolk Southern Corp. and Norfolk Southern Ry. Corp.*, No. 1:92-cv-545-HTW, slip op. (N.D.Ga. Jan. 22, 1993), asserting that in *Williams*, the court found a similar release to be unambiguous, and barred an employee's

hearing loss claim, which had not been filed. However, our research indicates that *Williams* was not published.

▮ Here, the dispositive question is the validity of the Release. In *Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 630–31, 68 S.Ct. 296, 298–99[4], 92 L.Ed. 242, 246[3] (1948), the Supreme Court found that a release is not a device intended to exempt a common carrier from liability prohibited by § 5 of the FELA (45 U.S.C. § 55) but is a means of compromising a claimed liability. 45 U.S.C. § 55 provides in pertinent part:

> **Contract … device exempting from liability …**
>
> Any contract … or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter shall be to that extent void. …

Further, in *Callen*, the Supreme Court provided that one who attacks a release bears the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted. *Callen*, 332 U.S. at 630, 68 S.Ct. at 298[3], 92 L.Ed. at 246. Additionally, in *South Buffalo Ry. Co. v. Ahern*, 344 U.S. 367, 373–74, 73 S.Ct. 340, 343[4], 97 L.Ed. 395, 401–02 (1953), it was stated:

> … Untainted by fraud or overreaching, full and fair compromises of FELA claims do not clash with the policy of the Act. …. The validity of such an agreement, however, raises a federal question to be resolved by federal law. …. And, mindful of the benevolent aims of the Act, we have jealously scrutinized private arrangements for the bartering away of federal rights.

A failure to explain fully FELA rights to an employee is a consideration in the fraud determination, but does not automatically constitute fraud. *Counts v. Burlington Northern R. Co.*, 952 F.2d 1136, 1141[6] (9th Cir. 1991). Also, a FELA release may be set aside on the basis of mutual mistake of fact in executing the release. *Id.* at 1141[7]. A release of a FELA claim operates as a waiver of a private right created and protected by

federal law. *South Buffalo*, 344 U.S. at 372–73, 73 S.Ct. at 343[3–5], 97 L.Ed. at 401–02. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege, *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023[3], 82 L.Ed. 1461, 1466 (1938), and no one can be bound by a waiver of one's rights unless it was made with full knowledge of the rights intended to be waived. *Universal Gas Co. v. Central Illinois Public Service Co.*, 102 F.2d 164, 168[6] (7th Cir.1939).

We find *Apitsch v. Patapsco & Back Rivers Railroad Co.*, 385 F.Supp. 495 (D.Md. 1974) to be of assistance. In *Apitsch*, plaintiff sued his employer, a railroad company, under the FELA to recover damages for certain injuries sustained in the course of his employment on employer's premises. *Apitsch*, 385 F.Supp. at 497. Employer contended that plaintiff was barred from recovery because, before filing his FELA claim, he executed a release. Prior to executing the release, employer's agent made certain explanations to employee concerning the treatment of FELA claims under the Maryland Workmen's Compensation Act. *Id.* at 497–500.

In finding for plaintiff, the court found that the practical effect of the agreement between employer and plaintiff's union was to enable employer to avoid the full scope of its FELA liability, thus violating § 5 of the FELA, *supra*. *Id.* at 504[7]. Further, the court found that the release and the statement also were void under § 5 because the release recited that the agreement and the statement read to employee failed to explain fully employee's FELA rights. *Id.* at 504–05[8]. Finally, the court found that even if the release were not void under § 5, it still would have to be invalidated because its execution was induced materially by employer's failure to explain to plaintiff the full scope of his rights and benefits under the FELA, and that under the circumstances of the case, such failure amounted to fraud. *Id.* at 505[9]. The court reasoned that where plaintiff was unassisted by counsel and had no prior familiarity with the FELA, employer's agent was obligated to bring home to plaintiff a full understanding of his FELA rights before soliciting

a waiver or release of those rights. *Id.* at 505[10].

■ Here, the record clearly indicates employee, without the assistance of his counsel, dealt only with Trainmaster Hall, who did not discuss employee's FELA claim with him. Further, the Release executed by employee does not mention or refer to employee's pending FELA claim for hearing loss. It appears that Hall was not aware at the time of the execution of the Release of employee's pending FELA claim and employee did not realize that the Release affected his pending claim. Additionally, neither employee's attorney nor employer's attorney was aware of the execution of the Release. In jealously scrutinizing this Release of employee's pending hearing loss claim, we find a genuine issue of material fact exists as to whether employee intended to waive his FELA rights in the execution of the Release.

In accordance with our finding, we reverse and remand for further proceedings.

Judgment reversed and remanded.

SMITH and PUDLOWSKI, JJ., concur.